# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Collins v. Bartlett Park District*, 2013 IL App (2d) 130006

---

| | |
|---|---|
| Appellate Court Caption | JOHN COLLINS, Plaintiff-Appellant, v. BARTLETT PARK DISTRICT, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-0006 |
| Filed | September 20, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the dismissal of plaintiff's claims for a violation of the Whistleblower Act and retaliatory discharge arising from his challenge of his supervisor's decision to continue operating a ski lift at the park district where he worked, the dismissal of his claim under the Act was upheld in the absence of an allegation that plaintiff refused to participate in an illegal activity, but the dismissal of the retaliatory discharge claim was reversed, since plaintiff alleged that the Safety Act applicable to the operation of ski lifts and regulations and inspections required by the Department of Labor were a clear mandate of a public policy of ensuring skier safety, and the question of whether plaintiff was discharged for insubordination or in retaliation for seeking enforcement of the safety regulations was a matter for the trier of fact. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 12-L-59; the Hon. Hollis L. Webster, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

Counsel on
Appeal

Stephen M. Cooper, Peter M. Storm, and Philip J. Piscopo, all of Cooper, Storm & Piscopo, of Geneva, for appellant.

Gregory R. James, David A. Moore, and Sara P. Yager, all of Laner Muchin, Ltd., of Chicago, and Edward F. Dutton, of Park District Risk Management Agency, of Lisle, for appellee.

Panel

PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Hutchinson and Jorgensen concurred in the judgment and opinion.

## OPINION

¶ 1     Defendant, Bartlett Park District, terminated the employment of plaintiff, John Collins, after plaintiff challenged his supervisor's decision to continue operating an allegedly defective ski lift at full capacity. Plaintiff filed a two-count amended complaint, alleging (1) retaliation in violation of section 20 of the Whistleblower Act (see 740 ILCS 174/20 (West 2012)) and (2) the common-law tort of retaliatory discharge.

¶ 2     The trial court dismissed both claims under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)), and plaintiff appeals. We affirm the dismissal of the whistleblower claim, reverse the dismissal of the retaliatory discharge claim, and remand the cause for further proceedings.

¶ 3                                           FACTS

¶ 4     In his amended complaint, plaintiff alleged the following facts common to both claims. Defendant owns and operates the Villa Olivia Country Club and Ski Facility (Villa Olivia) in Bartlett. The ski facility includes chair lifts designed to transport skiers to the top of a ski hill. Each chair in the lift at issue holds up to four passengers.

¶ 5     From 1983 until late in 2010, Villa Olivia's prior owner employed plaintiff, whose job title was assistant superintendent. Plaintiff's duties included overseeing the day-to-day operations of the ski hill, maintaining the buildings, maintaining and repairing equipment for the ski hill and golf course, and maintaining and repairing the chair lifts to ensure their safe operation. Defendant purchased Villa Olivia in November 2010. Plaintiff reapplied for his position and was hired by defendant in December 2010.

¶ 6     The Carnival and Amusement Rides Safety Act (Safety Act) regulates the operation and maintenance of ski lifts in Illinois, including the chair lifts and other lifts at Villa Olivia. See

430 ILCS 85/2-2(4)(b) (West 2012) ("amusement ride" governed by the Safety Act defined to include "any ski lift, rope tow, or other device used to transport snow skiers"). The Safety Act charges the Department of Labor and the Carnival-Amusement Safety Board to "promulgate and formulate definitions, rules and regulations for the safe installation, repair, maintenance, use, operation, training standards for operators, and inspection of all amusement rides and amusement attractions as the Director finds necessary for the protection of the general public using amusement rides and amusement attractions." 430 ILCS 85/2-6 (West 2012). Accordingly, the Director of the Department of Labor adopted a regulation that implements the standards of "ANSI B-77.1" from the American National Standards Institute (ANSI), which is entitled "2006 Passenger Ropeways–Aerial Tramways, Aerial Lifts, Surface Lifts, Tows and Conveyors–Safety Requirements (2006)" (hereinafter ANSI Code). 56 Ill. Adm. Code 6000.15(a)(1)(B) (2009).

¶ 7    On December 26, 2010, plaintiff discovered that the chair lift had a maintenance problem. Two worn sheave wheel liners on tower 3 caused the chair cable, when ascending the lift, to ride outside the sheave wheel assemblies. Plaintiff observed that the defect caused the chair lift's rope grips to be in contact with the sheave flanges, outside the line sheave groove.

¶ 8    Plaintiff alleged that a chair lift operating this way would be a violation of sections 4.1.3.3.2 and 4.1.3.3.3 of the ANSI Code. Furthermore, the haul rope grip no longer passed smoothly over and under the line sheaves as required by section 4.1.4.3.1 of the ANSI Code. On December 26, 2010, plaintiff drafted, signed, and delivered to defendant a handwritten description of the chair lift's condition on that date. Plaintiff attached a copy of that document to the amended complaint.

¶ 9    To reduce the load on the system, plaintiff adopted a temporary safety measure of loading only two passengers on every other chair, rather than four passengers on every chair. This measure prevented the chair cable from riding outside the sheave wheel assembly and temporarily brought the chair lift into compliance with the ANSI Code.

¶ 10   Plaintiff reported the problem and his temporary solution to his supervisor, John Carlson, the parks department superintendent. Carlson decided to repair the system by replacing the two sheave wheel assemblies. Plaintiff alleged that such a replacement is not "the ordinary method of repairing the system" but would be effective if the correct parts were used. Plaintiff ordered the correct replacement parts, but the wrong parts arrived. By January 14, 2011, the system could not be repaired as Carlson directed.

¶ 11   At defendant's request, plaintiff tested the chair lift and learned that the cable, when the chairs were fully loaded, was still riding outside the sheave wheel assemblies. The condition had not changed since plaintiff's discovery of the problem the previous month.

¶ 12   Plaintiff persisted in his opinion that safe operation of the chair lift required restricting the number of passengers and chairs that were loaded. Plaintiff instructed the chair lift operator to continue to load only every other chair with only two passengers. Plaintiff notified defendant of his findings and his directions to the operator.

¶ 13   On January 15, 2011, plaintiff arrived at work and discovered that the chair lift was operating at full capacity. Plaintiff immediately reiterated his instruction to the operator to

restrict the load.

¶ 14    The operator responded that Rita Fletcher, Villa Olivia's executive director, had instructed him to load the chairs to full capacity. Plaintiff told the operator that running the chair lift that way was "wrong" and that he should load every other chair only.

¶ 15    Fletcher summoned plaintiff and informed him that she and Carlson had decided that the chair lift would be operated at full capacity, even though it had not been repaired yet. Fletcher reprimanded plaintiff for disobeying her orders.

¶ 16    Plaintiff told Fletcher that her proposed method of operating the chair lift was unsafe and violated the ANSI Code and the manufacturer's instructions. Plaintiff also told Fletcher that he would report the violation to the Department of Labor.

¶ 17    Fletcher persisted in her order that the chair lift be operated at full capacity, and plaintiff responded that he could not obey that order. Thereafter, defendant excluded plaintiff from any decisions regarding the safety of the chair lift.

¶ 18    On January 17, 2011, a lift engineer inspected the system pursuant to the Safety Act. Plaintiff was not notified of the inspection. The engineer reported no problems with tower 3, which plaintiff had found to be defective. However, the engineer reported two findings regarding tower 2. First, a lower ring that holds the bullwheel liner in place had a section where several welds were cracked. The ring was loose, which caused the wheel to make a "cyclical noise" on every rotation. The engineer recommended repairing the ring within four days and monitoring it closely. Second, a particular sheave unit needed alignment and likely needed new sheave liners, with one of the sheaves needing immediate attention. Alignment would be challenging, because the line gauge was spread. Plaintiff alleged that he was capable of performing the repairs recommended by the engineer, but defendant did not inform him of the recommendations.

¶ 19    On January 24, 2011, Carlson, acting on behalf of defendant, informed plaintiff that his employment was terminated. Plaintiff alleged, upon information and belief, that after his termination defendant adopted his safety measure of loading only two people on only every other chair of the lift.

¶ 20    Defendant filed a combined motion to dismiss plaintiff's amended complaint, pursuant to sections 2-615, 2-619, and 2-619.1 of the Code (735 ILCS 5/2-615, 2-619, 2-619.1 (West 2012)). On September 20, 2012, the trial court dismissed the whistleblower claim under section 2-615 for failing to state a claim. The court initially declined to dismiss the retaliatory discharge claim, but on December 5, 2012, the court reconsidered its decision and dismissed that claim under section 2-615 as well. Accordingly, plaintiff's entire action was dismissed with prejudice. Plaintiff's timely appeal followed.

¶ 21                                              ANALYSIS

¶ 22    Initially, we address plaintiff's request to strike portions of defendant's brief. Plaintiff asserts that defendant's nature-of-the-case and statement-of-facts sections are inaccurate and argumentative. Illinois Supreme Court Rule 341(h)(2) (eff. July 1, 2008) requires an introductory paragraph stating (1) the nature of the action and of the judgment appealed from

and whether the judgment is based upon the verdict of a jury, and (2) whether any question is raised on the pleadings and, if so, the nature of the question. In defendant's brief, the section labeled "nature of the case" consists of a 2½-page recitation of the facts, including an explanation of the parties' arguments to the trial court. Such detail is excessive, and we consider it a violation of Rule 341(h)(2).

¶ 23 Illinois Supreme Court Rule 341(h)(6) (eff. July 1, 2008) requires a statement of facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal. Although defendant's statement of facts contains argument, it is not so argumentative that it must be stricken. We decline to strike the nature-of-the-case and statement-of-facts sections of defendant's brief, but we disregard any inappropriate or unsupported material and any argument contained in those sections.

¶ 24                                              A. Whistleblower Act

¶ 25 In his whistleblower claim, plaintiff additionally alleged that (1) he had a good-faith belief that the chair lift was defective, creating an unsafe condition and violating specific sections of the ANSI Code; (2) he was justified in instructing the chair lift operator to operate the lift at less than full capacity to remedy the condition, despite the contrary orders of Fletcher and Carlson; and (3) defendant terminated plaintiff's employment in retaliation for his directing the operator to run the lift at less than full capacity. Plaintiff contends that these allegations stated a claim of retaliation in violation of section 20 of the Whistleblower Act, and therefore his whistleblower claim should not have been dismissed under section 2-615 of the Code. We disagree.

¶ 26 A motion to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2012)) challenges the legal sufficiency of a complaint, based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). To review the legal sufficiency of a complaint, a court accepts as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts and construes the allegations in the light most favorable to the plaintiff. *Marshall*, 222 Ill. 2d at 429. While a plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action, a cause of action should not be dismissed under section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Marshall*, 222 Ill. 2d at 429-30.

¶ 27 Section 20 of the Whistleblower Act provides, in relevant part, that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20 (West 2012). The Appellate Court, First District, in a case directly on point, recently held that the language of section 20 is unambiguous and that, to state a claim, a "plaintiff must actually refuse to participate" in an activity that would violate a law or regulation. *Sardiga v. Northern Trust Co.*, 409 Ill. App. 3d 56, 62 (2011). The term "refusing" under section 20 "means refusing; it does not mean 'complaining' or 'questioning.' " *Sardiga*, 409 Ill. App. 3d at 62.

¶ 28 Although plaintiff has alleged that defendant knowingly decided to continue operating a defective chair lift in violation of a law or regulation, plaintiff has failed to allege that he

actually refused to participate in that activity. Instead, plaintiff has alleged that, when he saw the chair lift operator loading the chairs to full capacity, he directed the operator to adopt his safety measure of running at one-quarter capacity. The operator refused to follow plaintiff's directive, per the instructions of Fletcher and Carlson. Fletcher reprimanded plaintiff, and he took no further action to pursue his objection. Plaintiff did not allege that he was operating the chair lift or that defendant ordered him to do something that he actually refused to do. Plaintiff complained to and questioned the decision of Fletcher and Carlson to continue operating the chair lift at full capacity, but such protestations are not a "refusal to participate" under section 20 of the Whistleblower Act. See *Sardiga*, 409 Ill. App. 3d at 62.

¶ 29    Plaintiff has failed to allege that he actually refused to participate in an illegal activity, and therefore he has not stated a claim for retaliation under section 20. The trial court correctly dismissed the whistleblower claim pursuant to section 2-615 of the Code.

¶ 30                                    B. Retaliatory Discharge

¶ 31    Illinois follows the general rule that an at-will employee may be discharged " 'for any reason or no reason.' " *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 500 (2009) (quoting *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 32 (1994)). Our supreme court, however, recognizes an exception to the general rule, in an action for retaliatory discharge. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 159 (1992). "To state a valid retaliatory discharge cause of action, an employee must allege that (1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Turner*, 233 Ill. 2d at 500. The exception is "a limited and narrow cause of action." *Turner*, 233 Ill. 2d at 500. If the employer has a valid, nonpretextual basis for discharging the employee, the element of causation is not met. *Hartlein*, 151 Ill. 2d at 160. The employee must identify a clear and specific mandate of public policy as opposed to a broad, general, or vague statement that does not provide specific guidance or is prone to multiple interpretations. *Turner*, 233 Ill. 2d at 503. "Unless the employee identifies a clear mandate of public policy that is violated by the employee's discharge, the complaint will not state a cause of action for retaliatory discharge." *Turner*, 233 Ill. 2d at 503.

¶ 32    Generally, the issue of retaliation is a question for the trier of fact to resolve. *Turner*, 233 Ill. 2d at 501 n.1. However, the issue of whether a public policy exists, and the related issue of whether the employee's discharge undermines the stated public policy, are questions of law for the court to decide. *Turner*, 233 Ill. 2d at 501.

¶ 33    In his retaliatory discharge claim, plaintiff alleged that a clear mandate of public policy requires the operators of ski lifts to maintain and operate them safely and to cooperate with the Department of Labor in reporting safety violations and maintenance and operational issues. Plaintiff alleged that the public policy is rooted in the Safety Act, the regulations promulgated by the Department of Labor, the inspections mandated by the Department of Labor, and the common law that imposes on operators liability for unsafe ski lifts that cause injuries.

¶ 34    Plaintiff also alleged that he was discharged in retaliation for reporting the hazard to

defendant, refusing to allow the ski lift to be operated in violation of safety standards, and informing defendant that continuing to operate the ski lift at full capacity was unsafe and a violation of the ANSI Code. Plaintiff concluded that his discharge violated the clear mandate of public policy that requires ski lifts to be maintained and operated safely.

¶ 35                              1. Section 2-615: Failure to State a Claim

¶ 36     Defendant argues that the retaliatory discharge claim failed to state a cause of action, and therefore the trial court correctly dismissed it under section 2-615 of the Code. Specifically, defendant argues that (1) no clear mandate of public policy was violated by plaintiff's discharge and (2) plaintiff's discharge was not retaliatory, because he had been engaging in insubordination. Plaintiff argues that his allegations stated a claim of retaliatory discharge, and therefore his claim should not have been dismissed. We agree.

¶ 37                                        a. Public Policy

¶ 38     Plaintiff alleged that a clear mandate of public policy requires the operators of ski lifts to maintain and operate them safely and to cooperate with the Department of Labor in reporting safety violations and maintenance and operational issues. Defendant characterizes plaintiff's allegation as a broad, general, and vague statement about "safety procedures" or "public safety" that does not amount to a clear mandate of public policy.

¶ 39     Generally, the ascertainment of public policy and the determination of whether the policy is undermined by an employee's discharge are questions of law for the courts. *Turner*, 233 Ill. 2d at 501. Thus, our review is *de novo*. *Turner*, 233 Ill. 2d at 502.

¶ 40     The public-policy element of retaliatory discharge reflects the tort's role in striking "a proper balance *** among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out." (Internal quotation marks omitted.) *Turner*, 233 Ill. 2d at 502. Although the term "clearly mandated public policy" eludes precise definition, "it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively." (Internal quotation marks omitted.) *Turner*, 233 Ill. 2d at 500. A clear mandate of public policy "must strike at the heart of a citizen's social rights, duties, and responsibilities." (Internal quotation marks omitted.) *Turner*, 233 Ill. 2d at 501. Also, a clear mandate of public policy must be sufficiently specific to put employers on notice that employment decisions relating to the policy could expose them to liability. *Turner*, 233 Ill. 2d at 503 ("An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." (Internal quotation marks omitted.)). Otherwise, evaluating the public-policy exception with generalized concepts of fairness and justice will result in an elimination of the at-will doctrine itself. *Turner*, 233 Ill. 2d at 502-03. Examples of public policies too general or vague to be enforced in an action for retaliatory discharge include the right to marry a coworker, product safety, promoting quality health care, and the Hippocratic Oath. *Turner*, 233 Ill. 2d at 503. The *Turner* court explained the importance of balancing the interests of employees, employers, and the public:

"Adherence to a narrow definition of public policy, as an element of a retaliatory discharge action, maintains the balance among the recognized interests. Employees will be secure in knowing that their jobs are safe if they exercise their rights according to a clear mandate of public policy. Employers will know that they may discharge their at-will employees for any or no reason unless they act contrary to public policy. Finally, the public interest in the furtherance of its public policies, the stability of employment, and the elimination of frivolous lawsuits is maintained. [Citation.]" *Turner*, 233 Ill. 2d at 507.

¶ 41 Clear mandates of public policy can be found in the constitution, statutes, judicial decisions, and safety regulations. *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502 (1985). In this case, the Safety Act defines "amusement ride" to mean "any ski lift, rope tow, or other device used to transport snow skiers." 430 ILCS 85/2-2(4)(b) (West 2012). Defendant does not dispute that the Safety Act governs the safe operation and maintenance of the ski lifts at Villa Olivia. Pursuant to the Safety Act, the Department of Labor and the Carnival-Amusement Safety Board promulgated and formulated definitions, rules, and regulations for the safe installation, repair, maintenance, use, operation, operator training standards, and inspection of all amusement rides as necessary for the protection of the general public using them. See 430 ILCS 85/2-6 (West 2012). Specifically, the Director of Labor adopted a regulation that implements the standards of ANSI B-77.1, entitled "2006 Passenger Ropeways–Aerial Tramways, Aerial Lifts, Surface Lifts, Tows and Conveyors–Safety Requirements (2006)." 56 Ill. Adm. Code 6000.15(a)(1)(B) (2009). Plaintiff alleged that defendant's insistence on operating the ski lift at full capacity violated many of those standards, which he cited in his amended complaint.

¶ 42 In *Mitee Racers, Inc. v. Carnival-Amusement Safety Board*, 152 Ill. App. 3d 812, 817 (1987), we thoroughly examined the legislative history of the Safety Act and determined that the legislature intended to regulate all mechanized amusement rides presenting a potential danger to the public. We noted that the Safety Act was passed in response to numerous injuries that resulted from amusement-ride accidents, including a serious accident at Six Flags Over Great America near Gurnee. *Mitee Racers*, 152 Ill. App. 3d at 817. We held that "the legislature intended that the [Safety Act] be broadly applied to all mechanized amusement rides in the interests of preventing danger to children, or any other users of the rides." *Mitee Racers*, 152 Ill. App. 3d at 819.

¶ 43 Consistent with *Mitee Racers*, we agree with plaintiff that the Safety Act, and the regulations promulgated thereunder, establish a clear mandate of public policy that operators maintain and operate ski lifts safely and to cooperate with the Department of Labor in reporting safety violations and maintenance and operational issues. This narrowly defined public policy protects the interest of preventing danger to skiers and other passengers of the chair lifts. We further conclude that plaintiff's termination, as alleged in his retaliatory discharge claim, undermined that clear mandate of public policy by stifling the willingness of other employees to complain of similar problems.

¶ 44 While defendant has an interest in operating its ski facility efficiently and profitably, one can hardly imagine how that interest could outweigh society's interest in seeing that ski lifts are operated in accordance with precise safety regulations. The public policy of protecting ski-lift passengers strikes at the heart of a citizen's social rights, duties, and responsibilities.

-8-

See *Turner*, 233 Ill. 2d at 501. The ANSI Code violations that plaintiff alleged show that the public policy is sufficiently specific to put defendant on notice that its employment decisions relating to that policy could expose it to liability. See *Turner*, 233 Ill. 2d at 503.

¶ 45 Our decision is supported by *Carty v. Suter Co.*, 371 Ill. App. 3d 784 (2007), in which the discharged employee alleged that he observed his employer, a food manufacturing company, using expired buttermilk and mislabeling its food products by listing certain ingredients that were not in the products. *Carty*, 371 Ill. App. 3d at 785. The employee alleged in his retaliatory discharge claim that the practices were "unlawful according to various federal laws and regulations." *Carty*, 371 Ill. App. 3d at 785. The trial court granted the employer summary judgment.

¶ 46 On appeal, we reversed the summary judgment, observing that " '[t]here is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens' " and that the primary purpose of the federal Food, Drug, and Cosmetic Act (21 U.S.C. §§ 342, 343 (2000)) is to protect the public health. *Carty*, 371 Ill. App. 3d at 789 (quoting *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 132 (1981)). We held that "to protect the public from the dangers associated with the use of spoiled food products and the mislabeling of food products, employees of manufacturers of food products must be able to freely report their concerns, as plaintiff attempted to do." *Carty*, 371 Ill. App. 3d at 789. Like the Food, Drug, and Cosmetic Act in *Carty*, the Safety Act creates a comprehensive scheme relating to public safety.

¶ 47 Defendant cites *Turner* for the proposition that skier safety is too general to be a clear mandate of public policy. In *Turner*, a respiratory therapist alleged that his hospital employer terminated him in retaliation for advising an accreditation surveyor regarding the timing of charting a patient's file. *Turner*, 233 Ill. 2d at 498. Without alleging a violation of any particular law or regulation, the employee stated that the practice violated " 'sound nursing and medical practices,' " and " 'was not consistent with sound medical practices.' " *Turner*, 233 Ill. 2d at 498. Our supreme court determined that the employee's retaliatory discharge action required a more specific expression of public policy than "patient safety." *Turner*, 233 Ill. 2d at 503.

¶ 48 This case is distinguishable from *Turner*, where the retaliatory discharge claim failed to cite violations of specific standards or regulations. Here, plaintiff alleged that the clear mandate of public policy of ensuring skier safety is rooted in the Safety Act, the regulations promulgated by the Department of Labor, the inspections mandated by the Department of Labor, and the common law that imposes on operators liability for unsafe ski lifts that cause injury. In *Turner*, the plaintiff invoked subjective standards and practices, but in this case plaintiff alleged multiple violations of a comprehensive scheme of safety-related statutes and regulations.

¶ 49 **b. Insubordination**

¶ 50 Defendant also asserts that plaintiff engaged in insubordination, which created a nonpretextual basis for his termination, and therefore the element of causation is not met and his discharge was not retaliatory. Defendant argues that, even if taken as true, plaintiff's

-9-

allegations establish that he was discharged for insubordination in that he attempted to countermand Fletcher's order to the operator to operate the ski lift at full capacity, after Fletcher had consulted with Carlson about the issue. Whether defendant discharged plaintiff for insubordination or in retaliation for attempting to comply with safety regulations is a factual question to be answered by the finder of fact. See *Turner*, 233 Ill. 2d at 501 n.1 (the issue of retaliation is a question for the trier of fact to resolve). The existence of a factual issue precludes dismissal under section 2-615 of the Code. See *Marshall*, 222 Ill. 2d at 429-30 (a cause of action should not be dismissed under section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery).

¶ 51                    2. Section 2-619(a)(9): Affirmative Matter

¶ 52    Defendant next argues that the retaliatory discharge claim must be dismissed under section 2-619(a)(9) of the Code because (1) plaintiff did not have an objective, good-faith belief that the chair lift violated the law and (2) sections 2-201 and 2-109 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-201, 2-109 (West 2012)) immunizes defendant from liability for the termination. Section 2-619(a)(9) provides that an action may be dismissed when "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2012). A ruling on a section 2-619 motion must " 'interpret all pleadings and supporting documents in the light most favorable to the nonmoving party.' " *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003) (quoting *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997)). However, conclusions of law or fact unsupported by specific factual allegations are not to be taken as true. *Buckner v. O'Brien*, 287 Ill. App. 3d 173, 176 (1997), *aff'd*, 182 Ill. 2d 12 (1998).

¶ 53    A ruling on a motion to dismiss pursuant to section 2-619(a)(9) is reviewed *de novo*. *Van Meter*, 207 Ill. 2d at 368. In reviewing a ruling on a motion to dismiss under section 2-619(a)(9), the relevant inquiry is " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55 (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993)).

¶ 54                        a. Good-Faith Belief of Violation

¶ 55    Courts examine both the intent of the employee and the motive of the employer in evaluating retaliatory discharge actions based on whistleblowing. Undoubtedly, the intent of the employee to blow the whistle is vital to a claim of retaliatory discharge. *Michael v. Precision Alliance Group, LLC*, 2011 IL App (5th) 100089, ¶ 23. When a court evaluates the intent of the employee, the test is whether the employee acted on a good-faith belief that the employer was violating the law. *Michael*, 2011 IL App (5th) 100089, ¶ 24. Defendant contends that the allegations in plaintiff's retaliatory discharge claim establish that he lacked a good-faith belief that defendant was violating the law. However, whether plaintiff had a good-faith belief that defendant's operation of the ski lift violated the law is a question for the finder of fact to decide. As in the case of a section 2-615 motion to dismiss, the existence

of a factual issue precludes dismissal under section 2-619(a)(9) of the Code. See *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 341 (2003) (the existence of a genuine issue of material fact precludes dismissal under section 2-619).

¶ 56                                    b. Tort Immunity Act

¶ 57    Finally, defendant argues that the retaliatory discharge claim warrants dismissal under section 2-619(a)(9) of the Code because sections 2-201 and 2-109 of the Tort Immunity Act confer immunity from liability for plaintiff's termination. Section 2-201 of the Tort Immunity Act provides that "[e]xcept as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2012). Our supreme court has recognized that section 2-201 "offers the most significant protection afforded to public employees under the Act." *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 484 (2002).

¶ 58    Additionally, section 2-109 of the Tort Immunity Act provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2012). Together, sections 2-201 and 2-109 provide discretionary immunity to public entities. See *Arteman*, 198 Ill. 2d at 484 ("Because '[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable' [citation], this broad discretionary immunity applies to the entities themselves." (Internal quotation marks omitted.)).

¶ 59    Relying upon *Smith v. Waukegan Park District*, 231 Ill. 2d 111 (2008), plaintiff argues that sections 2-201 and 2-109 of the Tort Immunity Act do not afford defendant immunity for retaliatory discharge. In that case, the employee sued his employer, the Waukegan Park District (District), for retaliatory discharge because he was terminated after filing a claim under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2000)). Our supreme court held that sections 2-201 and 2-109 of the Tort Immunity Act did not entitle the District to dismissal of the retaliatory discharge claim pursuant to section 2-619(a)(9) of the Code.

¶ 60    The employee suffered a work-related injury that required medical treatment and time off work, and he filed a workers' compensation claim. Upon the employee's return to work, the District insisted that he submit to a drug and alcohol test. When the employee refused, his supervisor terminated his employment. The complaint alleged that the drug-test demand was "retaliatory harassment" for filing the workers' compensation claim and that the discharge was retaliatory.

¶ 61    Advocating dismissal under section 2-619(a)(9), the District argued that it was immune under section 2-109 of the Tort Immunity Act because the supervisor made the termination decision and only a municipal employer, and not its employees, can be liable for the tort of retaliatory discharge. *Smith*, 231 Ill. 2d at 115. Our supreme court disagreed, emphasizing that "it is not the public entity's employee who causes the retaliatory discharge. Rather, it is the employer. Section 2-109 only grants immunity to a public entity from 'an injury *resulting from an act or omission of its employee* where the employee is not liable.' " (Emphasis in

original.) *Smith*, 231 Ill. 2d at 117 (quoting 745 ILCS 10/2-109 (West 2002)). Concluding that section 2-109 did not afford the District immunity, the *Smith* court held that "section 2-109 immunity does not apply in cases of retaliatory discharge because the employer, not the employee, ultimately causes the injury." *Smith*, 231 Ill. 2d at 117.

¶ 62     Alternatively, the District argued that the combined effect of sections 2-201 and 2-109 of the Tort Immunity Act gave the District discretionary immunity because the supervisor's termination decision was a discretionary act and a determination of policy. *Smith*, 231 Ill. 2d at 114. The District concluded that section 2-201 immunized the supervisor and that the District was correspondingly immune pursuant to section 2-109. Again, the supreme court disagreed, reiterating its position that "this argument fails because it incorrectly views the employee as the pertinent actor when it is the employer who 'acts' within the meaning of section 2-109 in a retaliatory discharge." *Smith*, 231 Ill. 2d at 118.

¶ 63     In determining that the Tort Immunity Act did not confer immunity on the District, the *Smith* court emphasized that (1) section 4(h) of the Workers' Compensation Act prohibits any employer from discharging an employee for exercising his workers' compensation rights (820 ILCS 305/4(h) (West 2002)) and (2) section 2-101(c) of the Tort Immunity Act leaves unaffected the liability, if any, of a local public entity or public employee under the Workers' Compensation Act (745 ILCS 10/2-101(c) (West 2002)). *Smith*, 231 Ill. 2d at 119. The *Smith* court stated that "[w]ithout expressing an opinion on firings in general by public entities, we declare, under established Illinois law, public entities possess no immunized discretion to discharge employees for exercising their workers' compensation rights." *Smith*, 231 Ill. 2d at 119.

¶ 64     Defendant argues that *Smith* denies immunity under sections 2-201 and 2-109 of the Tort Immunity Act *only* in retaliatory discharge cases where the retaliation is provoked by the filing of a workers' compensation claim. Defendant distinguishes *Smith* from this case, where plaintiff's discharge allegedly was based on a disagreement with management over the method of operating the ski lift. Defendant draws a distinction without a difference. The rationale of *Smith* applies equally to this case, even though the statutory safeguards of section 4(h) of the Workers' Compensation Act and section 2-101(c) of the Tort Immunity Act do not lend additional support to plaintiff's retaliatory discharge claim.

¶ 65     Consistent with *Smith*, we agree with plaintiff that sections 2-201 and 2-109 of the Tort Immunity Act are not affirmative matter defeating plaintiff's retaliatory discharge claim. As in *Smith*, section 2-109 immunity does not apply to this claim of retaliatory discharge, because defendant, not Fletcher or Carlson, ultimately caused the alleged injury to plaintiff. See *Smith*, 231 Ill. 2d at 117. Neither Fletcher nor Carlson is the "pertinent actor" because it is defendant that "acted" within the meaning of section 2-109 in a retaliatory discharge. See *Smith*, 231 Ill. 2d at 118. Our conclusion that defendant is not immune from liability for plaintiff's discharge obviates the need to determine whether the acts of Fletcher and Carlson actually were discretionary.

¶ 66                   CONCLUSION

¶ 67     For the preceding reasons, the dismissal of plaintiff's whistleblower claim is affirmed,

the dismissal of plaintiff's retaliatory discharge claim is reversed, and the cause is remanded for further proceedings consistent with this opinion.

¶ 68   Affirmed in part and reversed in part; cause remanded.