2020 IL App (1st) 190739-U

FIRST DISTRICT,
SECOND DIVISION
February 4, 2020

No. 1-19-0739

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| LAUREN GONZALES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois. |
| v. | ) | |
| | ) | No. 2017 L 12254 |
| GARFIELD PARK CONSERVATORY | ) | |
| ALLIANCE, | ) | Honorable |
| | ) | Patrick J. Sherlock, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:  In retaliatory discharge action, summary judgment for employer was proper where former employee did not allege that her employer violated any regulation or statute, nor did she allege that she believed in good faith that any such violation occurred.

¶ 2    Plaintiff Lauren Gonzales was fired from her job as a receptionist at defendant Garfield Park Conservatory Alliance.  She brought an action for retaliatory discharge, alleging that she was fired for expressing concerns about poor workplace security and filing a complaint with the Occupational Health and Safety Administration (OSHA) shortly before her termination.

¶ 3    The trial court granted summary judgment to the Alliance, finding that Gonzales presented no evidence that her discharge violated a clear mandate of public policy, since she did not allege any wrongdoing by the Alliance or its violation of a regulation or statute. We agree with the trial court and affirm.

¶ 4                                                    BACKGROUND

¶ 5    In May 2016, Gonzales was hired by the Alliance as a visitor services associate at the Chicago Park District's Garfield Park facility. Her job was to sit at the front desk in the lobby and greet visitors to the facility. According to Gonzales, a security guard was stationed in the lobby around half the time.

¶ 6    On March 31, 2017, Gonzales was alone on duty with no security guard present when a visitor approached her aggressively and said, "I am from the Trump administration and this is your last day." Gonzales, who is Hispanic, felt "incredibly threatened." She immediately reported the incident to her supervisor, Mike Donatowicz, who told her, "[T]here's nothing you can do about it." She also verbally reported the incident to James Law, the president of the Alliance, who said, "Are you sure he wasn't kidding?"

¶ 7    On April 5, Gonzales emailed Mary Eysenbach, the Director of Conservatories for the Chicago Park District, expressing her concerns about the incident and about lobby security in general. She was particularly concerned that the security cameras in the lobby were nonfunctional and that the front desk was in a corner, limiting avenues for quick escape in an emergency. Eysenbach said she would consult with Donatowicz regarding Gonzales' concerns.

¶ 8    On May 12, Gonzales sent a followup email to Eysenbach, asking what safety resolutions were made and how they would be implemented. She also expressed concern that there were tables in the lobby, which she considered a security hazard for reasons she did not explain. Later

that day, Eysenbach emailed Donatowicz and Law, stating: "[Gonzales] clearly does not understand the chain of command and that [the Alliance and the Chicago Park District] are two different organizations. I have 35 of my own staff people to manage, and I don't have time for her whining. Please deal with her."

¶ 9     On June 5, Gonzales filed a complaint with OSHA, raising the previously mentioned safety concerns (desk and table placement, nonfunctional cameras, lack of a constant security guard) as well as the lack of a "panic button" at the front desk. Around the same time, Gonzales received disciplinary notices for excessive tardiness and "insubordination," as well as a warning that further infractions would result in termination. The parties dispute the circumstances in which she received these notices. According to Gonzales, on the morning of June 5, she informed Donatowicz that she was filing a complaint with OSHA. Later that day, he presented her with the disciplinary notices, which were back-dated to May 18. For his part, Donatowicz denied ever speaking with Gonzales about her OSHA complaint.

¶ 10     The parties also dispute the merits of the disciplinary notices. Regarding the notice for excessive tardiness, Gonzales asserted that she never arrived late without first obtaining approval from Donatowicz. As for Gonzales' "insubordination," Donatowicz stated in the disciplinary notice that Gonzales disregarded his repeated orders not to "go over [his] head" by emailing Eysenbach about her security concerns. Gonzalez testified that this was false and that Donatowicz explicitly gave her permission to "go ahead" and send her email.

¶ 11     On June 15, the federal OSHA office in Calumet City sent Gonzales a letter advising her that her "complaint does not list a specific hazard that OSHA has jurisdiction over." It further stated that as a courtesy, it contacted management of the Alliance, which responded in writing

that the Chicago Park District provided a security guard in the lobby "every hour of every day that [the facility is] open to the public."

¶ 12    Three days later, on June 18, Gonzales was scheduled to work. She did not come to work but asked a co-worker to cover her shift. According to Gonzales, Donatowicz had previously given her and her co-workers permission to make schedule changes amongst themselves. Later that day, Gonzales received a text message from Donatowicz informing her that her employment was terminated. On June 20, Donatowicz sent her an email stating that she was terminated for "excessive tardiness, call offs and insubordination."

¶ 13    On November 20, 2017, Gonzales filed a retaliatory discharge action against the Alliance, alleging that she was terminated for voicing her concerns about workplace security and safety measures and for filing a complaint with OSHA. She further alleged that the Alliance's articulated reasons for firing her were a mere pretext for retaliatory discharge.

¶ 14    The Alliance moved for summary judgment, arguing that Gonzales could not prove an essential element of her claim, namely, that her discharge violated a clear mandate of public policy. It argued that Gonzales did not allege any illegal or improper conduct by the Alliance, nor did her safety concerns implicate any public policy.

¶ 15    On March 18, 2019, the trial court granted summary judgment in favor of the Alliance, finding that Gonzales could not sustain a claim for retaliatory discharge because she "fail[ed] to direct this Court to any specific safety regulation or statute defendant violated."

¶ 16                                    ANALYSIS

¶ 17    Gonzales argues that the trial court's grant of summary judgment must be reversed because there is an issue of material fact as to whether she was fired for making an OSHA complaint, which would violate a clear mandate of public policy. She raises no argument as to

her other activities, *i.e.*, verbally complaining to her superiors and emailing Eysenbach about her safety concerns.

¶ 18    We review the trial court's grant of summary judgment *de novo* (*Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008)), keeping in mind that summary judgment is appropriate where "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016).  To prevail, the nonmoving party must present some evidence that would arguably entitle her to recover at trial.  *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 472 (2010).

¶ 19    The tort of retaliatory discharge is a narrow exception to the general rule that an at-will employee may be terminated at any time for any reason.  *Michael v. Precision Alliance Group, LLC*, 2014 IL 117376, ¶ 29.  To state a claim for retaliatory discharge, plaintiff must prove that (1) she was discharged, (2) the discharge was in retaliation for her activities, and (3) the discharge "violates a clear mandate of public policy."  *Id.* ¶ 31.  Our supreme court has explained a "clearly mandated public policy" as follows:

> " 'There is no precise definition of the term.  In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively.  It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. [Citation.] Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed.' " *Turner v. Memorial Medical Center*, 233 Ill. 2d 494,

502, 503 (2009) (quoting *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 130 (1981)).

In practice, Illinois courts have only found the public policy element to be met where (1) the discharge stems from asserting a worker's compensation claim or (2) the discharge is for "whistleblowing," *i.e.*, reporting of illegal or improper conduct. *Sutherland v. Norfolk Southern Railway Co.*, 356 Ill. App. 3d 620, 626 (2005) (citing *Geary v. Telular Corp.*, 341 Ill. App. 3d 694, 701 (2003) (collecting cases)).

¶ 20      For whistleblowing claims, the employee must identify a "specific" and "clear" mandate of public policy violated by her discharge, not merely a "broad, general statement of policy." *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 502, 503 (2009). "Clear mandates of public policy can be found in the constitution, statutes, judicial decisions, and safety regulations." *Collins v. Bartlett Park District*, 2013 IL App (2d) 130006, ¶ 41. Thus, for instance, a clearly mandated policy was violated when an employee was fired for informing police of a co-worker's criminal activity (*Palmateer*, 85 Ill. 2d at 132 ("There is no public policy more basic *** than the enforcement of a State's criminal code")); for attempting to stop the sale of kidney dialyzers that did not comply with Food and Drug Administration standards (*Balla v. Gambro, Inc.*, 145 Ill. 2d 492, 499 (1991)); and for objecting to ski lift procedures that violated regulations promulgated under the Carnival and Amusement Rides Safety Act (*Collins*, 2013 IL App (2d) 130006, ¶ 41 (citing 56 Ill. Adm. Code 6000.15(a)(1)(B) (2009)).

¶ 21      By contrast, where an employee does not allege a violation of any law or regulation, her general concerns about safety will not support a claim of retaliatory discharge. *Turner*, 223 Ill. 2d at 503 (citing cases where employee concerns about "product safety" and "promoting quality health care" were insufficient to constitute clear mandates of public policy). For instance, the

*Turner* plaintiff, a respiratory therapist, informed an accreditation agency that his employer did not follow agency standards for electronically charting patient files. *Id.* at 497-98. Plaintiff also opined that his employer's deviation from the agency standard jeopardized patient safety. Plaintiff was fired six days later and brought a retaliatory discharge action against his former employer. But his complaint "fail[ed] to recite or even refer to a specific [agency] standard in support of his allegation." *Id.* at 505. Because his complaint did not set forth any specific public policy being violated, our supreme court held that he failed to state a cause of action for retaliatory discharge. *Id.*

¶ 22 Similarly, in *Lucas v. County of Cook*, 2013 IL App (1st) 113052, the plaintiff was a physician who brought a retaliatory discharge suit after being fired for refusing to treat male patients with sexually transmitted diseases. We affirmed summary judgment for the employer, since the employer did not violate any law or regulation and plaintiff's articulated public policy of "protect[ing] the health and safety of the citizens of Illinois" was "broad and general as opposed to clear and specific." *Id.* ¶ 34.

¶ 23 Here, as in *Turner* and *Lucas*, Gonzales has not set forth any specific mandate of public policy violated by her discharge. In her complaint, she states only that she "suffered fear and apprehension for her safety and that of other GCPA employees and visitors," but she does not allege the Alliance violated any specific regulation or law. Thus, Gonzales' generalized "fear and apprehension" is exactly the kind of "broad, general statement of policy [that] is inadequate to justify finding an exception to the general rule of at-will employment." *Turner*, 233 Ill. 2d at 502.

¶ 24 Gonzales argues that *Turner* and *Lucas* are distinguishable because she was fired in retaliation for filing an OSHA complaint, which she contends is "a proper predicate for a

common law retaliatory discharge claim." In support, she cites retaliatory discharge cases in which employees were terminated in retaliation for filing or planning to file OSHA complaints about unsafe work conditions. *Sherman v. Kraft General Foods, Inc.*, 272 Ill. App. 3d 833 (1995) (employee fired before he could file OSHA complaint about asbestos in workplace); *Gomez v. The Finishing Co., Inc.*, 369 Ill. App. 3d 711 (2006) (employee fired for filing OSHA complaint about high levels of heat, smoke, and paint dust in work environment). She acknowledges that, unlike in *Sherman* and *Gomez*, OSHA determined that her complaint lacked merit, insofar as it "d[id] not list a specific hazard that OSHA has jurisdiction over." But she argues that she is not required to prove that the Alliance's conduct was illegal, merely that she had a good-faith belief in the Alliance's wrongdoing. See *Mackie v. Vaughan Chapter—Paralyzed Veterans of America, Inc.*, 354 Ill. App. 3d 731, 740 (2004) ("A plaintiff need only have a good-faith belief that the defendant was violating the law; the plaintiff need not conclusively show that the law was broken or the regulations in question were violated.").

¶ 25      However, Gonzales did not allege in her complaint that she believed in good faith that the Alliance violated any OSHA standard or was otherwise engaging in illegal conduct. Nor did she make any such allegation in her deposition or in her response to the Alliance's motion for summary judgment. In fact, the record lacks any evidence that Gonzales reasonably thought the Alliance's alleged security shortcomings were in violation of any specific law or regulation. Thus, her personal dissatisfaction with the Alliance's security measures will not sustain a retaliatory discharge claim. *Rabin v. Karlin & Fleisher, LLC*, 409 Ill. App. 3d 182, 188-89 (2011) (dismissal of retaliatory discharge claim was proper where employer's conduct "while distasteful, is not manifestly illegal" and employee did not allege facts to support a good-faith belief that his employer was violating the law); see also *Murphy v. Jason, Inc.*, 362 F. Supp. 2d

976, 981 (N.D. Ill. 2005) (plaintiff was not a "whistleblower" where employer was complying with OSHA directives and "there was simply nothing on which to blow a whistle").

¶ 26    Finally, Gonzales argues that material issues of fact exist as to why she was terminated, since the Alliance claims she was terminated for "excessive tardiness, call offs and insubordination," while she claims it was in retaliation for voicing her safety concerns. But even construing the record strictly in Gonzales' favor, Gonzales still has not presented evidence that her discharge violated a clear mandate of public policy, which is a required element of a retaliatory discharge claim. Accordingly, summary judgment for the Alliance was proper. See *Lucas*, 2013 IL App (1st) 113052, ¶ 34 (employer was entitled to summary judgment where employee did not articulate a clear mandate of public policy violated by her discharge).

¶ 27                                   CONCLUSION

¶ 28    Gonzales was not a whistleblower; she did not report any illegal or improper conduct by the Alliance, nor did she allege that she believed in good faith the Alliance was engaging in any such conduct. Accordingly, the trial court properly granted summary judgment to the Alliance on her retaliatory discharge claim.

¶ 29    Affirmed.