2021 IL App (2d) 200302-U
Nos. 2-20-0302 & 2-20-0485 cons.
Order filed September 2, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO U.S. BANK NATIONAL ASSOCIATION, N.D., | ) ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CH-1024 |
| JENNIFER L. SENESE, a/k/a Jennifer Senese; FEDERAL NATIONAL MORTGAGE ASSOCIATION; UNKNOWN OWNERS AND NONRECORD CLAIMANTS; FOX RIVER SHORES-VILLAGE OF WATERFORD HOMEOWNERS ASSOCIATION; and NORTHERN MORAINE WASTEWATER RECLAMATION DISTRICT, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants-Appellees, | ) ) | Honorable Suzanne C. Mangiamele, |
| (Jeffrey Kelley, Intervenor-Appellant). | ) | Judge, Presiding. |

| | | |
|---|---|---|
| U.S. BANK TRUST, as Trustee for LSF9 Master Participation Trust, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Counter-Defendant-Appellee, | ) ) | |
| v. | ) ) | No. 17-CH-368 |
| JENNIFER L. SENESE a/k/a Jennifer | ) | |

Louise Senese a/k/a Jennifer Senese;   )
U.S. BANK NATIONAL ASSOCIATION,   )
N.D.; NORTHERN MORAINE   )
WASTEWATER RECLAMATION   )
DISTRICT; FOX RIVER SHORES-VILLAGE )
OF WATERFORD HOMEOWNERS   )
ASSOCIATION; and UNKNOWN OWNERS  )
AND NONRECORD CLAIMANTS,   )
                                    )
    Defendants,                         )
                                      )  Honorable
   (Jeffrey Kelley, Intervenor-Counter-  )  Suzanne C. Mangiamele
   Plaintiff-Appellant).              )  Judge, Presiding.

---

JUSTICE HUDSON delivered the judgment of the court.
Presiding Justice Bridges and Justice Birkett concurred in the judgment.

## ORDER

¶ 1   *Held*:  (1) Trial court had jurisdiction to consider petition to intervene filed by third-party purchaser of foreclosed property; (2) trial court did not err in granting junior mortgagee's motion to dismiss intervenor's section 2-1401 petition; (3) trial court did not err in granting senior mortgagee's motion to dismiss intervenor's counterclaim; and (4) trial court did not abuse its discretion in confirming second sale arising from senior mortgagee's foreclosure suit.

¶ 2    These consolidated appeals arise from separate mortgage foreclosure suits. The first suit, case No. 16-CH-1024, was filed by the junior mortgagee, U.S. Bank National Association, successor by merger to U.S. Bank National Association, N.D. (U.S. Bank). The second suit, case No. 17-CH-368, was filed by the senior mortgagee, U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust (Trustee).[1] Both suits resulted in the foreclosure and subsequent judicial sale of the same property, which is located at 3379 Waterford Way, Island Lake, Illinois (hereinafter, the Property). Jeffrey Kelley (Kelley) purchased the Property at the judicial sale following the entry of a judgment of foreclosure in the U.S. Bank suit (case No. 16-CH-1024).

---

[1] Although U.S. Bank and the Trustee have similar names, they are separate legal entities.

Several months after the trial court confirmed the sale, Kelley intervened in case No. 16-CH-1024 and filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)). In his section 2-1401 petition, Kelley prayed for relief from the foreclosure judgment and the order confirming the judicial sale in the U.S. Bank suit "[i]n the event the foreclosure judgment in Case No. 17 CH 368 is allowed to stand and [the Trustee] is permitted to foreclose *** [Kelley's] title to the Property." U.S. Bank filed a motion to dismiss Kelley's section 2-1401 petition pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)). The trial court granted U.S. Bank's motion to dismiss. Kelley subsequently filed a notice of appeal from the trial court's dismissal order, which appeal was docketed in this court as case No. 2-20-0302.

¶ 3        After the trial court entered a judgment of foreclosure in the Trustee foreclosure suit (case No. 17-CH-368), the Trustee purchased the Property at a judicial sale and filed a motion to confirm the sale. Kelley intervened and objected to the motion to confirm. The trial court denied the motion to confirm and vacated the sale. Upon the denial of the Trustee's motion to reconsider, Kelley filed a two-count counterclaim seeking to quiet title to the Property (count I) and alleging slander of title (count II). The Trustee moved to dismiss the counterclaim pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)). The trial court granted the Trustee's motion and dismissed Kelley's counterclaim with prejudice. The Property was then sold at a second judicial sale, with the Trustee again being the highest bidder. Over Kelley's objection, the trial court confirmed the second sale. Kelley filed a notice of appeal from the trial court's orders dismissing his counterclaim and confirming the second sale of the Property. Kelley's appeal was docketed in this court as case No. 2-20-0485. On Kelley's motion, we consolidated both of Kelley's appeals.

¶ 4    Before this court, Kelley raises three principal contentions. First, he argues that the trial court erred in dismissing his section 2-1401 petition in case No. 16-CH-1024. Second, he argues that the trial court erred in dismissing his counterclaim in case No. 17-CH-368. Third, he argues that the trial court abused its discretion in confirming the second foreclosure sale in case No. 17-CH-368. We affirm.

¶ 5                                    I.  BACKGROUND

¶ 6    On November 21, 2007, Christopher and Jennifer Senese (collectively, the Seneses) executed a mortgage encumbering the Property as security for an indebtedness in favor of U.S. Bank in the original amount of $134,928 (U.S. Bank Mortgage). The U.S. Bank Mortgage was recorded in the Office of the McHenry County Recorder on December 14, 2007, as Document 2007R0081024. About four years later, the Seneses executed a second mortgage encumbering the Property as security for an indebtedness in favor of J.P. Morgan Chase Bank, N.A. (Chase) in the original amount of $169,267 (Trustee Mortgage). The Trustee Mortgage was recorded in the Office of the McHenry County Recorder on December 1, 2011, as Document 2011R0048593.

¶ 7    Simultaneously with the Trustee Mortgage, Chase and U.S. Bank executed a mortgage subordination agreement (Subordination Agreement). The Subordination Agreement was recorded in the Office of the McHenry County Recorder as Document 2011R0048594 on December 1, 2011, the same day as the Trustee Mortgage. U.S. Bank acknowledged in the Subordination Agreement that the U.S. Bank Mortgage "is and shall be and shall remain fully subordinate for all purposes to the lien of the [Trustee] Mortgage on the Property."

¶ 8    In or about June 2015, the Seneses defaulted on both the U.S. Bank Mortgage and the Trustee Mortgage. On or about October 8, 2015, Chase assigned its interest in the Trustee Mortgage to the Federal National Mortgage Association (Fannie Mae).

¶ 9                                    A. U.S. Bank Foreclosure and Sale

¶ 10    In December 2016, U.S. Bank filed a complaint in the trial court to initiate case No. 16-CH-1024 to foreclose the U.S. Bank Mortgage (U.S. Bank Foreclosure). U.S. Bank joined Fannie Mae as a defendant "whose interest in or lien on the mortgaged real estate is sought to be terminated." Fannie Mae was served with the complaint on December 28, 2016. Also on December 28, 2016, U.S. Bank filed a "*Lis Pendens* Notice of Foreclosure" with the Office of the McHenry County Recorder, which was recorded as Document 2016R0050619. On January 9, 2017, Fannie Mae assigned its interest in the Trustee Mortgage to the Trustee, which assignment was recorded in the Office of the McHenry County Recorder on January 20, 2017, as Document 2017R0002529. Neither Fannie Mae nor the Trustee filed an appearance or otherwise participated in the U.S. Bank Foreclosure.

¶ 11    On April 19, 2017, the trial court entered an order of default against the defendants named in the U.S. Bank Foreclosure. On the same date, the trial court entered a judgment of foreclosure against all defendants, including Fannie Mae. The judgment of foreclosure states in pertinent part as follows:

"THIS CAUSE coming to be heard upon Motion for Judgment of Foreclosure of *** U.S. Bank ***. It is hereby ordered:

* * *

6.      That the rights and interests of all of the following Defendants to this cause in and to the property hereinbefore described, are inferior to the lien of [U.S. Bank]: Federal National Mortgage Association ***.

* * *

12. Said real estate is free and clear of all liens and encumbrances that have been named herein, except unpaid general real estate taxes for the present or past years and thereafter and special assessments, if any, subject to any Defendants [*sic*] right of redemption.

13. [U.S. Bank's] mortgage is prior and superior to all other mortgages, claims of interests and liens upon said real estate that have been named herein, except for real estate taxes and special assessments, if any, that have been named herein."

The judgment of foreclosure further provided that: (1) in the event of a sale of the Property, "the Defendants made parties to the foreclosure in accordance with statutory provisions and all persons claiming by, through or under them, and each and any and all of them, shall be forever barred and foreclosed of any right, title, interest, claim, lien or right to redeem in and to the mortgaged real estate" and (2) upon confirmation of the sale of the Property, payment of the purchase price, and any other amounts required to be paid by the purchase at sale, "the party conducting said sale shall execute and deliver to the holder of the certificate of sale *** a deed sufficient to convey title; said conveyance shall be an entire bar to all claims of the parties to the foreclosure and all persons claiming thereunder and all claims of UNKNOWN OWNERS and any NON RECORD CLAIMANTS if served by publication." Also on April 19, 2017, the trial court entered an order appointing Intercounty Judicial Sales Corporation as the selling officer for the purpose of conducting the sale of the Property at a public auction.

¶ 12    On May 8, 2017, an attorney with Intercounty Judicial Sales Corporation served notice on defendants in the U.S. Bank Foreclosure, including Fannie Mae, that a sale of the Property would be held on June 22, 2017. Further, on May 16, May 23, and May 30, 2017, U.S. Bank published notices that a sale would be held pursuant to the judgment of foreclosure. Both the served and

published notices admonished prospective bidders to "check the court file to verify all information." Meanwhile, on May 15, 2017, the Trustee recorded a "*Lis Pendens* and Notice of Foreclosure" with the Office of the McHenry County Recorder as Document 2017R0017185. On May 31, 2017, U.S. Bank filed a motion to partially vacate the April 19, 2017, judgment of foreclosure as to Fannie Mae and to dismiss Fannie Mae as a party defendant. In the motion, which was set for presentment on July 12, 2017, U.S. Bank asserted that its mortgage was subordinate to Fannie Mae's mortgage pursuant to the Subordination Agreement recorded on December 1, 2011. On June 22, 2017, prior to the hearing on U.S. Bank's motion to vacate and dismiss, Kelley purchased the Property at a judicial sale pursuant to the judgment in the U.S. Bank Foreclosure. Kelley paid $151,310.28 for the Property, $1 more than U.S. Bank's credit bid.

¶ 13    On July 12, 2017, the trial court entered an order vacating the judgment against Fannie Mae and dismissing Fannie Mae as a party defendant. On July 13, 2017, U.S. Bank filed a motion to confirm the judicial sale to Kelley, setting the motion for presentment on July 26, 2017. Kelley was listed as a recipient on the service list attached to the motion to confirm. The motion noted that U.S. Bank sought to dismiss Fannie Mae as a defendant. A second motion to confirm the sale was filed on August 1, 2017, setting the motion for presentment on August 16, 2017. Kelley was listed as a recipient on the second motion to confirm. The second motion to confirm did not reference that U.S. Bank was seeking to dismiss Fannie Mae. In an order file stamped August 16, 2017 (but dated by the court as entered on July 26, 2017), the trial court confirmed the judicial sale. On September 15, 2017, a judicial sale deed was issued to Kelley, which he recorded on October 30, 2017. On October 20, 2017, U.S. Bank executed a satisfaction of mortgage, which was recorded on October 26, 2017, and acknowledged that the U.S. Bank Mortgage was paid in full. After Kelley purchased the Property, he expended funds to remodel it. He subsequently

executed a residential real-estate contract to sell the Property to a third party for $235,000. The buyer terminated the real-estate contract before the sale had been completed.

¶ 14                                    B. Trustee Foreclosure and Sale

¶ 15    On May 9, 2017, after the trial court entered the judgment of foreclosure in the U.S. Bank Foreclosure, but prior to the judicial sale at which Kelley purchased the Property, the Trustee filed a complaint to initiate case No. 17-CH-368 to foreclose the Trustee Mortgage (Trustee Foreclosure). In the complaint, the Trustee named U.S. Bank as a defendant "whose interest or lien on the mortgage [*sic*] real estate is sought to be terminated," referencing the U.S. Bank Mortgage, the Subordination Agreement, and the U.S. Bank *lis pendens* recorded on December 28, 2016. U.S. Bank was served with the Trustee Foreclosure on May 17, 2017. Kelley, who did not have an interest in the Property at the time, was not named as a defendant in the complaint. As noted above, on May 15, 2017, the Trustee recorded a *lis pendens* with the Office of the McHenry County Recorder.

¶ 16    On October 6, 2017, the Trustee filed a motion for default as to all defendants. On October 30, 2017, the trial court granted the motion for default, entered a judgment of foreclosure that found the Trustee Mortgage lien was superior to the rights and interests of all defendants, and ordered the property to be sold.

¶ 17    On December 14, 2017, the Property was sold pursuant to the judgment in the Trustee Foreclosure, with the Trustee as the highest bidder. The sale price was $202,399.37, and did not result in a surplus. The Trustee filed motions to confirm the sale on both December 29, 2017, and February 8, 2018, but Kelley filed a petition to intervene on February 8, 2018, citing section 2-408(a) of the Code (735 ILCS 5/2-408(a) (West 2018)). The trial court granted Kelley's petition on February 26, 2018. Upon intervention, Kelley objected to the confirmation of the sale on the

ground that "justice was otherwise not done" pursuant to section 15-1508(b) of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1508(b) (West 2018)). According to Kelley, he held title to the Property free and clear after the trial court confirmed the sale in the U.S. Bank Foreclosure. The Trustee filed a reply in support of its motion to confirm, and oral arguments were heard by the trial court on April 16, 2018.

¶ 18    On December 5, 2018, the trial court denied the Trustee's motion to confirm and vacated the sale. In its ruling, the trial court found that Kelley was entitled to rely upon the record in the U.S. Bank Foreclosure in concluding that the judgment of foreclosure and judicial sale had extinguished the Trustee Mortgage, despite being on notice of the *lis pendens* and other recorded documents. The trial court also found that (1) the Trustee should have notified Kelley and joined him to the Trustee Foreclosure after Kelley obtained title to the Property; (2) the Trustee should have participated in the U.S. Bank Foreclosure; (3) Kelley had no need to intervene in the Trustee Foreclosure prior to the sale because "his property rights weren't affected at that point in time"; and (4) Kelley could rely on the broader intervention provision of section 2-408 of the Code (735 ILCS 5/2-408 (West 2018)) rather than the narrower intervention provision of section 1501(e) of the Foreclosure Law (735 ILCS 5/15-1501(e) (West 2018)). The court concluded that "[t]he case screams equity" and that "justice [was] not otherwise done."

¶ 19    On January 15, 2019, the Trustee filed a motion to reconsider the trial court's oral ruling. On May 6, 2019, the trial court issued a memorandum opinion and order denying the motion to reconsider. The trial court found that Kelley's objection to the confirmation of the sale was appropriate because his participation in the proceedings may affect the proceeds of the sale. See 735 ILCS 5/15-1501(e)(3) (West 2018). The trial court then acknowledged that, under Illinois law, "a junior mortgagee's foreclosure proceeding cannot affect a senior mortgagee's lien interest

regardless of whether the senior mortgagee participates in the junior mortgagee's foreclosure proceeding," but found that the Trustee's inactions as to the U.S. Bank Foreclosure "collectively tainted the sale process in [the Trustee Foreclosure]." As a result, Kelley was prevented from "making an informed decision on the purchase of the [P]roperty" and "justice was not otherwise done."

¶ 20       D. Kelley's Petition for Relief from Judgment in Case No. 16-CH-1024

¶ 21    Meanwhile, on April 27, 2018, more than eight months after the trial court confirmed the judicial sale in the U.S. Bank Foreclosure, Kelley filed a petition for relief from judgment in case No. 16-CH-1024 pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2018)). In the petition, Kelley sought relief from the foreclosure judgment and sale, including but not limited to an order directing U.S. Bank to disgorge and return the funds he paid at the foreclosure sale. The trial court denied the section 2-1401 petition without prejudice on July 2, 2018, because Kelley had not filed a petition to intervene.

¶ 22    On July 16, 2018, Kelley filed a petition to intervene pursuant to section 2-408(b) of the Code (735 ILCS 5/2-408(b) (West 2018)), which the trial court granted on December 5, 2018. U.S. Bank filed a motion to reconsider the order granting Kelley's petition to intervene, arguing that: (1) the trial court lacked jurisdiction to hear the petition to intervene; and (2) section 15-1501 of the Foreclosure Law (735 ILCS 5/15-1501 (West 2018)) prohibited Kelley from intervening subsequent to the entry of an order confirming the sale. On May 6, 2019, the trial court denied U.S. Bank's motion to reconsider.

¶ 23    On January 10, 2019, while plaintiff's motion to reconsider was pending, Kelley refiled his section 2-1401 petition and later filed a memorandum in support of the petition on November 13, 2019. Kelley argued that the Trustee was attempting to foreclose the U.S. Bank Mortgage for a

second time in the Trustee Foreclosure and that U.S. Bank had a duty to either clarify the record in the U.S. Bank Foreclosure or notify him of the Trustee's superior lien interest. Thus, Kelley sought to unwind the sale and return the proceeds to him in the event the Trustee was successful in the Trustee Foreclosure.

¶ 24    On December 11, 2019, U.S. Bank moved to dismiss Kelley's petition pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)). In its motion to dismiss, U.S. Bank argued that: (1) the trial court lacked jurisdiction to permit Kelley to intervene and it thus also lacked jurisdiction to hear the section 2-1401 petition; (2) Kelley's section 2-1401 petition is barred by section 15-1509(c) of the Foreclosure Law (735 ILCS 5/15-1509(c) (West 2018)) and therefore must be dismissed with prejudice pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)); (3) Kelley's section 2-1401 petition is barred by section 2-1401(e) of the Code (735 ILCS 5/2-1401(e) (West 2018)) and therefore must be dismissed with prejudice pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)); and (4) Kelley's section 2-1401 petition failed to satisfy the requirements of section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2018)) and therefore must be dismissed with prejudice under section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)).

¶ 25    On March 18, 2020, the trial court granted the motion to dismiss pursuant to sections 2-615 and 2-619(a)(9) of the Code, concluding that: (1) Kelley's arguments were based on his defenses to the Trustee Foreclosure rather than the U.S. Bank Foreclosure; (2) Kelley failed to allege any factual or legal basis establishing that U.S. Bank had a duty to clarify or notify him of the Trustee's senior lien; (3) Kelley failed to allege facts sufficient to establish a meritorious defense or claim, due diligence in presenting the defense or claim, or due diligence in filing his section 2-1401 petition; and (4) the section 2-1401 petition was barred by section 15-1509(c) of

the Foreclosure Law (735 ILCS 5/15-1509(c) (West 2018)) and section 2-1401(e) of the Code (735 ILCS 5/2-1401(e) (West 2018)). On May 14, 2020, Kelley filed a notice of appeal from the trial court's order of March 18, 2020.[2]

¶ 26        E. Kelley's Counterclaim in Case No. 17-CH-368 and Second Sale

¶ 27    Meanwhile, on July 25, 2019, prior to the dismissal of his section 2-1401 petition in the U.S. Bank Foreclosure, Kelley filed a two-count counterclaim against the Trustee in case No. 17-CH-368. Count I sought to quiet title. Kelley asserted that the Trustee's foreclosure action and *lis pendens* constituted clouds on his title to the Property. Kelley sought a declaration that title to the Property is vested in him alone (per his purchase of the Property in the U.S. Bank Foreclosure) and that the Trustee has no right, title, or other interest in the Property. Count II alleged slander of title based on a subsequent attempted sale of the Property Kelley could not consummate due to the presence of the Trustee Mortgage on the title. On August 19, 2019, the Trustee moved to dismiss the counterclaim with prejudice under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)). The Trustee argued that under clearly-established Illinois law, the foreclosure of a junior lien can never extinguish a senior lienholder's interest regardless of whether the senior

---

[2] Normally, a notice of appeal must be filed within 30 days after the entry of the final judgment appealed from. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). However, in response to the Covid-19 pandemic, the Illinois Supreme Court entered M.R. 30370, which extended the deadline to file a notice of appeal due on or after March 24, 2020, and before September 1, 2020, to 60 days from the date of the circuit court judgment. See *In re Illinois Court's Response to COVID-19 Emergency*, M.R. 30370 (March 24, 2020, and August 28, 2020).

mortgagee participates in the junior mortgagee's foreclosure proceeding. See *Heritage Federal Credit Union v. Giampa*, 251 Ill. App. 3d 237, 239 (1993).

¶ 28    On December 5, 2019, after the parties had fully briefed the motion, the trial court dismissed Kelley's counterclaim with prejudice. The trial court concluded that the judgment of foreclosure was not the final order in the U.S. Bank Foreclosure, the dismissal of Fannie Mae prior to the order confirming the sale (the actual final order) meant that the Trustee Mortgage was not subject to the judgment in the U.S. Bank Foreclosure, and the Trustee's lien was not extinguished.

¶ 29    Following the court's dismissal of Kelley's counterclaim, the Property was sold at a second judicial sale on January 16, 2020. The Trustee was again the highest bidder. The purchase price was $239,941.32, and there was no surplus. The Trustee moved to confirm the sale on February 5, 2020. Kelley objected to the confirmation of the second sale. He claimed that the circumstances had not changed since the trial court denied the Trustee's motion to reconsider the denial of the confirmation of the first sale on May 6, 2019, and that the Trustee had simply proceeded to a second sale without addressing or remedying any of the issues which existed at the time the court issued its decision on May 6, 2019. Kelley further argued that "justice was otherwise not done." Kelley also continued to assert that the Trustee Mortgage was extinguished by the U.S. Bank Foreclosure.

¶ 30    The trial court granted the motion to confirm sale on August 4, 2020, *nunc pro tunc* to July 31, 2020. The trial court distinguished this ruling from its prior ruling denying confirmation of the first sale by noting that Kelley had had an opportunity to participate in the proceedings, there were no irregularities in the sale process, and "justice was otherwise done."

¶ 31    Kelley moved to stay enforcement of the judgment on August 25, 2020, and timely appealed three days later. In his notice of appeal, Kelley appealed from the trial court's orders of

July 31, 2020 (order approving report of sale and distribution and confirming sale and eviction), and December 5, 2019 (dismissing with prejudice Kelley's counterclaim). The court granted the motion to stay after the approval of an appeal bond on October 22, 2020. We docketed Kelley's appeal as case No. 2-20-0485, and subsequently granted his motion to consolidate the appeal with case No. 2-20-0302.

¶ 32                                    II. ANALYSIS

¶ 33                              A. Appeal No. 2-20-0302

¶ 34     In appeal No. 2-20-0302, Kelley challenges the trial court's dismissal of his section 2-1401 petition. U.S. Bank initially responds that this court lacks jurisdiction to hear Kelley's appeal. On the merits, U.S. Bank asserts that the trial court properly dismissed Kelley's section 2-1401 petition because: (1) it was barred by section 15-1509(c) of the Foreclosure Law (735 ILCS 5/15-1509(c) (West 2018)); (2) it was barred by section 2-1401(e) of the Code (735 ILCS 5/2-1401(e) (West 2018)); and (3) Kelley failed to satisfy the requirements for a section 2-1401 petition. We turn first to U.S. Bank's jurisdictional challenge.

¶ 35                                   1. Jurisdiction

¶ 36     U.S. Bank initially posits that this court lacks jurisdiction to consider appeal No. 2-20-0302 because the trial court lacked jurisdiction to rule upon Kelley's petition to intervene and his section 2-1401 petition. In support of this position, U.S. Bank suggests that Kelley's petition to intervene was untimely because it was filed more than 30 days after entry of the August 16, 2017, order confirming the judicial sale, which constituted "the final order in the case." See *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115649, ¶ 12 (quoting *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 11) ("In the context of a mortgage foreclosure proceeding, it is well settled that in the absence of a Supreme Court Rule 304(a) finding in the judgment of foreclosure, 'it is the order

- 14 -

confirming the sale, rather than the judgment of foreclosure, that operates as the final and appealable order in a foreclosure case.' "); *Wilk v. Wilmorite, Inc.*, 349 Ill. App. 3d 880, 883 (2004) (noting that the failure to file a posttrial motion within 30 days of a final judgment divests the trial court of jurisdiction to modify or vacate the final order). Given this timeline, U.S. Bank reasons that the trial court lacked jurisdiction to consider Kelley's petition to intervene and his subsequently filed section 2-1401 petition. In response, Kelley does not dispute that his petition to intervene was filed more than 30 days after entry of the August 16, 2017, order confirming the judicial sale. Nevertheless, Kelley suggests that there is nothing "*per se* untimely" about a petition to intervene that is filed after a judgment was entered and contends that his petition to intervene was the only means by which he could protect his rights. Alternatively, Kelley asserts that U.S. Bank should be barred from challenging the trial court's decision to grant his petition to intervene because it did not file a cross-appeal raising the issue.

¶ 37    Section 2-408 of the Code recognizes that intervention may be either permissive or of right. 735 ILCS 5/2-408 (West 2018); *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 243 Ill. App. 3d 544, 547 (1993). In case No. 16-CH-1024, Kelley sought to intervene pursuant to section 2-408(b), which allows permissive intervention. 735 ILCS 5/2-408(b) (West 2018); *In re Application of County Collector of Du Page County for Judgment for Delinquent Taxes for the Year 1992*, 181 Ill. 2d 237, 247 (1998). Section 2-408(b) provides in relevant part that "[u]pon timely application anyone may in the discretion of the court be permitted to intervene in an action * * * when an applicant's claim or defense and the main action have a question of law or fact in common." 735 ILCS 5/2-408(b) (West 2018). Thus, in determining whether to grant a petition to intervene under section 408(b), a court must consider whether the petition is timely and whether the applicant's claim or defense and the main action have a question of law or fact in common.

735 ILCS 5/2-408(b) (West 2018); *Schultz v. Gotlund*, 185 Ill. App. 3d 943, 945 (1989), *rev'd on other grounds*, 138 Ill. 2d 171 (1990). Generally, the timeliness of a petition to intervene is left to the discretion of the trial court. *RTS Plumbing Co., Inc. v. DeFazio*, 180 Ill. App. 3d 1037, 1042 (1989). Similarly, a trial court's decision regarding whether an individual may intervene is a matter of judicial discretion. *Urban Partnership Bank v. Chicago Title Land Trust Co.*, 2017 IL App (1st) 162086, ¶ 17; *RTS Plumbing Co., Inc.*, 180 Ill. App. 3d at 1042. When a decision lies within the sound discretion of a trial court, we will not disturb the court's rulings on appeal absent an abuse of that discretion. *State Farm Mutual Automobile Insurance Co. v. Progressive Northern Insurance Co.*, 2015 IL App (1st) 140447, ¶ 69. An abuse of discretion occurs when the trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the position taken by the trial court. *Control Solutions, LLC v. Elecsys*, 2014 IL App (2d) 120251, ¶ 38. Moreover, we are mindful that because the intervention statute is remedial in nature, it should be liberally construed. *In re Bailey*, 2016 IL App (5th) 140586, ¶ 22.

¶ 38    On appeal, U.S. Bank does not contest that Kelley's "claim or defense and the main action have a question of law or fact in common." Instead, U.S. Bank's sole argument is that Kelley's petition to intervene was untimely because it was filed 11 months after the entry of the final order in its foreclosure case. While it is true that a party may not normally seek to intervene after the rights of the original parties have been determined and a final decree has been entered, a petition to intervene may be deemed timely filed even after a final judgment has been entered where the intervenor lacked knowledge of the action prior to the judgment being entered or where it is necessary to protect the rights of the intervenor. See *In re Bailey*, 2016 IL App (5th) 140586, ¶¶ 18-19 (holding that petition to intervene filed 31 days after entry of final judgment was timely where the intervenor lacked notice to seek intervention at an earlier date); *Winders v. People*, 2015 IL

App (3d) 140798, ¶¶ 14-15 (holding that petition to intervene filed three months after entry of final judgment was timely where the intervenor sought to intervene soon after receiving court order); *Redmond v. Devine*, 152 Ill. App. 3d 68, 73-75 (1987) (holding that intervention was timely despite being filed 20 months after entry of final judgment because doing so was necessary to protect the intervenor's rights); see also *People ex rel. Hartigan*, 243 Ill. App. at 548 (noting that certain factors are considered in determining the timeliness of a petition to intervene, including when the intervenor became aware of the litigation, the amount of time that elapsed between the initiation of the action and the filing of the petition to intervene, and the reason for the party's failure to seek intervention at an earlier date).

¶ 39    In his petition to intervene, Kelley alleged that four months after his purchase of the Property at the foreclosure sale was confirmed, a second sale of the Property was held as a result of the judgment of foreclosure in case No. 17-CH-368. Kelley further alleged that he was not a named party in case No. 17-CH-368, the Property was sold at the second sale, and the purchaser of the Property in case No. 17-CH-368 was seeking to confirm the second sale. Kelley therefore asserted that his title to the Property, obtained through the original confirmation of the sale and by the payment of $151,310.28 to U.S. Bank, was in jeopardy "by subsequent actions in a subsequent proceeding that fails to acknowledge actions taken by [the trial] Court." In ruling on Kelley's petition to intervene, the court explained that after the confirmation of a foreclosure sale, "[t]he idea is to protect [the] interest [of the third-party purchaser] and to protect the idea of sales that they are conclusive." The court further remarked:

"The other thing that is of some concern to the Court is that no notice was ever given to Mr. Kelley in the 16 CH 1024 case for the motion to [partially] vacate [the April 19, 2017, judgment of foreclosure as to Fannie Mae and to dismiss Fannie Mae as a

defendant]. The sale had already taken place. That judgment of foreclosure affected what he was buying. Someone should have told him so he could have maybe intervened or shown up at the motion to confirm and say, Yo, Judge, [I] really don't want this property anymore because now I know."

As the foregoing suggests, the trial court reasoned that granting the petition to intervene was necessary to protect Kelley's rights. Considering the record on appeal before us, and the liberal construction given the intervention statute, we cannot say that the trial court's decision was arbitrary, fanciful, or unreasonable, or that no reasonable person would agree with the position taken by the trial court. Indeed, as set forth above, the record clearly establishes that Kelley sought to intervene in case No. 16-CH-1024 to protect his claim to the Property. See *Redmond*, 152 Ill. App. 3d at 74 (noting that intervention will be granted after judgment where it is necessary to protect the intervenor's rights). Because the trial court did not abuse its discretion in granting Kelley's petition to intervene in case No. 16-CH-1024, we reject U.S. Bank's jurisdictional challenge.

¶ 40                            2. Section 2-1401 Petition

¶ 41    Section 2-1401 provides a statutory mechanism by which a final order or judgment may be vacated or modified "after 30 days from the entry thereof." 735 ILCS 5/2-1401 (West 2018); *PNC Bank, National Ass'n v. Kusmierz*, 2020 IL App (2d) 190521, ¶ 22. Consistent with the strong judicial policy favoring finality of judgments, Illinois courts have held that a section 2-1401 petition is not to be used as a device to relitigate issues already decided or to put in issue matters which have previously been or could have been adjudicated. *Hirsch v. Optima, Inc.*, 397 Ill. App. 3d 102, 110-11 (2009). Although section 2-1401 allows for some legal challenges, the principal purpose of a section 2-1401 petition is to bring to the attention of the trial court facts that, if known

at the time of judgment, would have prevented its entry. *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 94 (2006); *In re Marriage of Little*, 2014 IL App (2d) 140373, ¶ 9. To be entitled to relief under a fact-dependent challenge, a section 2-1401 petitioner must affirmatively set forth specific factual allegations supporting: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting the defense or claim; and (3) due diligence in filing the section 2-1401 petition. *In re Marriage of Little*, 2014 IL App (2d) 140373, ¶ 9. Moreover, the petition must be supported "by affidavit or other appropriate showing as to matters not of record." 735 ILCS 5/2-1401(b) (West 2018). Proceedings under section 2-1401 are subject to the rules of civil practice. *People v. Vincent*, 226 Ill. 2d 1, 8 (2007). As such, a section 2-1401 petition, as the initial pleading and "the procedural counterpart to a complaint," may be challenged by a motion to dismiss. *In re Marriage of Little*, 2014 IL App (2d) 140373, ¶ 8. We review *de novo* the trial court's dismissal of a section 2-1401 petition. *In re Marriage of Little*, 2014 IL App (2d) 140373, ¶ 9.

¶ 42      In this case, Kelley's section 2-1401 petition sought relief from the trial court's April 19, 2017, judgment of foreclosure and the August 16, 2017, order confirming the foreclosure sale. U.S. Bank filed a motion to dismiss Kelley's section 2-1401 petition pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)). Section 2-619.1 permits pleadings under section 2-615, motions for involuntary dismissal or other relief under section 2-619, and motions for summary judgment under section 2-1005 to "be filed together as a single motion in any combination." 735 ILCS 5/2-619.1 (West 2018); *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003). U.S. Bank sought dismissal of Kelley's section 2-1401 petition under sections 2-615 and 2-619(a)(9) of the Code (735 ILCS 5/2-615, 2-619(a)(9) (West 2018)). A motion to dismiss brought pursuant to section 2-615 of the Code challenges the

legal sufficiency of a complaint based on defects apparent on its face. *Collins v. Bartlett Park District*, 2013 IL App (2d) 130006, ¶ 26. To review the legal sufficiency of a petition, the court accepts as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts and construes the allegations in the light most favorable to the non-movant. *Collins*, 2013 IL App (2d) 130006, ¶ 26. Accordingly, a section 2-1401 petition should not be dismissed under section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the petitioner to recovery. *Collins*, 2013 IL App (2d) 130006, ¶ 26. In contrast, a motion to dismiss based on section 2-619 of the Code admits the legal sufficiency of the petition but raises defects, defenses, or other affirmative matter, appearing on the face of the petition or established by external submissions, that defeat the claim. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 6-7 (2007); *People v. McVeay*, 2021 IL App (2d) 190292, ¶ 17; *Jaros v. Village of Downers Grove*, 2020 IL App (2d) 180654, ¶ 35. The trial court dismissed Kelley's section 2-1401 petition pursuant to both section 2-615 of the Code and section 2-619(a)(9) of the Code.

¶ 43                    a. Dismissal Pursuant to Section 2-615

¶ 44    The trial court dismissed the petition pursuant to section 2-615 of the Code on the basis that Kelley failed to allege facts sufficient to establish a meritorious defense or claim, due diligence in presenting the defense or claim, or due diligence in filing his section 2-1401 petition. At the outset, we note that Kelley's section 2-1401 petition was insufficient on its face. In this regard, although Kelley extensively recites the facts of the case in his section 2-1401 petition and memorandum in support thereof, he neglects to argue that the pleading has merit as a section 2-1401 petition. Indeed, the only references to section 2-1401 in Kelley's petition or his supporting memorandum appear in the title of the two documents. Further, while the petition implies the existence of a meritorious defense, it does not directly or implicitly address the two diligence

elements. These deficiencies alone present a basis to dismiss the petition. See *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986) (noting that a party must establish all three elements to warrant relief under section 2-1401); *Charles Austin, Ltd. v. A-1 Food Services, Inc.*, 2014 IL App (1st) 132384, ¶ 49 (same).

¶ 45    Despite Kelley's failure to set forth and discuss the elements necessary for section 2-1401 relief, the trial court construed Kelley's petition and supporting memorandum to imply the existence of a meritorious defense or claim. Specifically, the trial court determined that "Kelley's argument in support of his assertion of meritorious defense" was that U.S. Bank had a duty to clarify the record in the U.S. Bank Foreclosure and notify him of (1) the Trustee's superior lien interest, (2) the Trustee's foreclosure complaint, and (3) U.S. Bank's motion to vacate the April 19, 2017, judgment of foreclosure as to Fannie Mae and to dismiss Fannie Mae as a party defendant. Ultimately, the trial court determined that Kelley failed to allege facts sufficient to demonstrate a meritorious defense or claim, stating that the court file was "not so convoluted and confusing as to not provide Kelley with constructive notice that the Judgment of Foreclosure might be modified." Further, the court determined that Kelley failed to allege facts sufficient to demonstrate due diligence in either presenting the defenses or claims or in filing his section 2-1401 petition.

¶ 46    We conclude that the trial court properly dismissed Kelley's section 2-1401 petition for failure to establish all three elements necessary to warrant relief under the provision. Notably, Kelley failed to affirmatively set forth specific factual allegations demonstrating due diligence in presenting his alleged defenses or claims. No bright-line rule exists for judging whether a petitioner has acted diligently. *Paul*, 223 Ill. 2d at 99. Rather, due diligence is judged by the reasonableness of the petitioner's conduct under all the circumstances. *Paul*, 223 Ill. 2d at 99-100. A petitioner

must show that his or her failure to act was the result of an excusable mistake and that under the circumstances he acted reasonably, and not negligently, when he or she failed to resist the judgment. *Smith*, 114 Ill. 2d at 222. Importantly, a proceeding under section 2-1401 is not intended to give the petitioner a new opportunity to do that which should have been done in an earlier proceeding or to relieve the party of the consequences of any mistake or negligence. *In re Marriage of Himmel*, 285 Ill. App. 3d 145, 148 (1996).

¶ 47    In this case, Kelley's defenses or claims were premised on U.S. Bank having a duty to clarify the record or notify him of the Trustee's superior lien interest, the Trustee's foreclosure complaint, and the U.S. Bank motion to vacate and dismiss as to Fannie Mae. However, this information was clearly of record before the judicial sale occurred. Significantly, on May 31, 2017, U.S. Bank filed a motion to partially vacate the April 19, 2017, judgment as to Fannie Mae (the Trustee's predecessor in interest) and to dismiss Fannie Mae as a defendant in the action. U.S. Bank's motion stated that its mortgage was subordinate to the Trustee Mortgage. The motion advised that the U.S. Bank Mortgage, the Trustee Mortgage, and the Subordination Agreement were filed in the office of the McHenry County Recorder. The motion provided the numbers under which those documents had been recorded. A title search would have also revealed the Trustee Mortgage, the Subordination Agreement, and the *lis pendens* notice of foreclosure filed by the Trustee on May 15, 2017. Further, events occurring between June 22, 2017, judicial sale and August 16, 2017 (the date the trial court entered the order confirming the judicial sale), brought additional clarity to the situation. On July 13, 2017, U.S. Bank filed a motion to confirm the judicial sale. Kelley was listed as a recipient on the service list attached to the motion to confirm. The July 13, 2017, motion to confirm expressly states that U.S. Bank was seeking to dismiss Fannie Mae as a defendant. A second motion to confirm the sale was filed on August 1, 2017. Kelley was listed

as a recipient on the second motion to confirm. The second motion to confirm did not state that U.S. Bank was seeking to dismiss Fannie Mae. However, on July 12, 2017, the trial court had entered an order granting U.S. Bank's motion to vacate the U.S. Bank Foreclosure judgment as to Fannie Mae and to dismiss Fannie Mae as a party defendant in that case.

¶ 48    Thus, the record shows that three weeks prior to the judicial sale, U.S. Bank moved to vacate the judgment of foreclosure as to Fannie Mae and remove Fannie Mae as a party defendant to the U.S. Bank Foreclosure because the judgment of foreclosure incorrectly stated that the Trustee Mortgage was inferior to the U.S. Bank Mortgage. It is true that U.S. Bank did not provide Kelley with notice of the May 31, 2017, motion. However, Kelley's rights in the Property did not arise until June 22, 2017, three weeks after U.S. Bank filed the motion. In any event, a search of the trial court record prior to the sale would have revealed the motion to vacate and dismiss. Further, Kelley was personally served with the two motions to confirm the sale. The first of these motions stated that U.S. Bank was seeking to dismiss Fannie Mae as a defendant. Moreover, on July 12, 2017, more than a month prior to entering the order confirming the judicial sale, the trial court granted U.S. Bank's motion to vacate judgment as to Fannie Mae and to dismiss Fannie Mae as a party defendant. Although the judgment of foreclosure was not expressly amended to reflect this change, a copy of the court's order appears in the record. We are aware of nothing that precluded Kelley from examining the trial court record in this case prior to the judicial sale or the hearing on the motion to confirm. Indeed, the notices of sale expressly admonished prospective bidders to "check the court file to verify all information." Moreover, a diligent purchaser would have reviewed the chain of title and discovered the Subordination Agreement and the Trustee's *lis pendens* notice, either of which would have provided Kelley actual notice prior to the sale that the Trustee asserted priority over the U.S. Bank Mortgage.  See *Brown v. McKean*, 250 Ill. App. 244,

246-47 (1928) ("A party purchasing at a judicial sale is charged with notice of such material facts as the record of the proceedings under which he derives title discloses, and he will be presumed to have examined the same before becoming a purchaser."); *In re County Collector*, 397 Ill. App. 3d 535, 549 (2009) ("A purchaser is placed on 'inquiry notice' when facts revealed in the title search process would cause a reasonable individual to think twice about completing the transaction."). Had Kelley examined the record prior to August 16, 2017, he clearly would have learned of the Trustee's asserted priority over the U.S. Bank Mortgage. Kelley's failure to conduct a thorough inquiry before bidding on the Property or a misunderstanding of the results of such an inquiry if undertaken, cannot relieve him of the consequences of any negligence or mistake. In light of the foregoing, we conclude that evidence of the Trustee's asserted priority over the U.S. Bank Mortgage was apparent well before either the trial court entered the order confirming the judicial sale or Kelley bid on the Property. As such, Kelley did not act diligently in presenting his alleged defenses or claims.

¶ 49    As noted earlier, a party must establish all three elements to warrant relief under section 2-1401. *Smith*, 114 Ill. 2d at 220-21. Because we have concluded that Kelley failed to establish due diligence in presenting a meritorious claim or defense, we need not discuss the remaining elements. *Smith*, 114 Ill. 2d at 223 (holding that the trial court did not abuse its discretion in denying section 2-1401 petition solely on the element of due diligence in defending against claims in original action). Thus, dismissal was proper under section 2-615 of the Code.

¶ 50                                b. Section 2-619(a)(9)

¶ 51    The trial court also granted U.S. Bank's motion to dismiss Kelley's section 2-1401 petition pursuant to section 2-619(a)(9) of the Code. Having determined that dismissal was proper under

section 2-615, we need not address the propriety of the trial court's ruling under section 2-619(a)(9).

¶ 52                             B. Appeal No. 2-20-0485

¶ 53    In appeal No. 2-20-0485, Kelley's argument is twofold. First, he contends that the trial court erred in dismissing his counterclaim pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)). Second, Kelley asserts that the trial court abused its discretion in confirming the second judicial sale. The Trustee initially responds that the trial court did not err in dismissing Kelley's counterclaim because the U.S. Bank Foreclosure had no effect on the Trustee Mortgage. Further, the Trustee argues that the trial court did not err in confirming the second judicial sale arising from the Trustee Foreclosure because there were no irregularities or inequities to Kelley in the "the process of the second sale."

¶ 54                             1. Counterclaim

¶ 55    The trial court dismissed Kelley's counterclaim on the Trustee's motion to dismiss pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)). The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). As noted previously, a motion to dismiss based on section 2-619 of the Code admits the legal sufficiency of the petition but raises defects, defenses, or other affirmative matter, appearing on the face of the petition or established by external submissions, that defeat the claim. *Orlak*, 228 Ill. 2d at 6-7; *McVeay*, 2021 IL App (2d) 190292, ¶ 17; *Jaros*, 2020 IL App (2d) 180654, ¶ 35. For purposes of section 2-619(a)(9), an "affirmative matter" is something in the nature of a defense which negates the cause of action completely. *Van Meter*, 207 Ill. 2d at 367. In ruling on a section 2-619 motion, the court interprets all pleadings and supporting documents in the light most favorable to the

nonmoving party. *Van Meter*, 207 Ill. 2d at 367. We review a dismissal under section 2-619 *de novo*. *American Family Mutual Insurance Co. v. Krop*, 2018 IL 122556, ¶ 13.

¶ 56    Kelley's counterclaim consisted of two counts, an action to quiet title and an action for slander of title. An action to quiet title is an equitable proceeding wherein a party attempts to remove a cloud on the title to his or her property. *LLC 1 05333303020 v. Gil*, 2020 IL App (1st) 191225, ¶ 19. A "cloud" exists where there is a semblance of a legal or equitable title, which is unfounded or which it would be inequitable for the court to enforce. *Hoch v. Boehme*, 2013 IL App (2d) 120664, ¶ 41. "Any instrument or proceedings in writing which appears of record and casts doubt upon the validity of the record title constitutes a cloud on the title." *Allensworth v. First Galesburg National Bank & Trust Co.*, 7 Ill. App. 2d 1, 4 (1955). Furthermore, a plaintiff must actually have title in order to claim there is a cloud on his title. *LLC 1 05333303020*, 2020 IL App (1st) 191225, ¶ 19. "The plaintiff must recover on the strength of his own title rather than on defects in the defendant's title." *Hoch*, 2013 IL App (2d) 120664, ¶ 41. In Illinois, slander of title is defined as the false and malicious publication of oral or written words which disparage a person's title to property, with the result that special damages are appropriate. *McDonald's Corp. v. American Motorists Insurance Co.*, 321 Ill. App. 3d 972, 988 (2001). The plaintiff must also show that the defendant acted with malice. *American National Bank & Trust Co. v. Bentley Builders, Inc.*, 308 Ill. App. 3d 246, 251 (1999). To demonstrate malice, the plaintiff must show that the defendant knew that the disparaging statements were false or that the statements were made with reckless disregard of their truth or falsity. *Contract Development Corp. v. Beck*, 255 Ill. App. 3d 660, 665 (1994). A defendant acts with reckless disregard if he or she published the allegedly damaging matter despite a high degree of awareness of its probable falsity or if the defendant has serious doubts as to its truth. *American National Bank & Trust Co. v. Bentley*

*Builders, Inc.*, 308 Ill. App. 3d 246, 252 (1999). The act of maliciously recording a document which casts a cloud upon another's title to real estate is actionable as slander of title. *Whildin v. Kovacs*, 82 Ill. App. 3d 1015, 1016 (1980).

¶ 57    Both counts of Kelley's counterclaim are premised on the contention that the U.S. Bank Foreclosure extinguished the Trustee Mortgage, leaving Kelley as the owner of the Property free and clear. Thus, Kelley's counterclaim is viable only if the Trustee Mortgage was junior to the U.S. Bank Mortgage. In addressing this issue, we find instructive *Heritage Federal Credit Union v. Giampa*, 251 Ill. App. 3d 237 (1993).

¶ 58    In *Heritage Federal Credit Union*, the plaintiff recorded a first mortgage on the subject property in August 1987. Harris Bank (Harris) recorded a second mortgage on the same property in September 1989. Harris foreclosed on its second mortgage (the Harris suit), and the defendant purchased the subject property at a court-ordered public foreclosure sale and obtained a sheriff's deed. The plaintiff, although not named as a party, filed an appearance in the Harris suit but took no other action. The plaintiff subsequently initiated a foreclosure suit on its first mortgage. The defendant moved to dismiss, arguing that the plaintiff had waived the priority of its lien by taking no action after it filed an appearance in the Harris suit. The trial court granted the motion to dismiss, and the plaintiff appealed.

¶ 59    On appeal, this court concluded that the trial court erred in dismissing the plaintiff's suit to foreclose its first mortgage. We noted well-established case law holding that "[a] suit to foreclose a junior mortgage can cut off only rights or claims of interest *subsequent* to the interest asserted." (Emphasis in original.) *Heritage Federal Credit Union*, 251 Ill. App. 3d at 238 (citing *Gregory v. Suburban Realty Co.*, 292 Ill. 568, 575 (1920), and *Dodds v. Snyder*, 44 Ill. 53, 55-56 (1867)). We further noted that a purchaser at a foreclosure sale "takes title to the property subject to all prior

liens and encumbrances." *Heritage Federal Credit Union*, 251 Ill. App. 3d at 239 (citing *Powell v. Voight*, 348 Ill. 605, 609 (1932), and *South Side Bank & Trust Co. v. Sherlock Holmes, Inc.*, 6 Ill. App. 2d 138, 141-42 (1955)). Applying those principles, this court held that the Harris suit to foreclose its second mortgage "could not cut off [the] plaintiff's prior interest in the property." *Heritage Federal Credit Union*, 251 Ill. App. 3d at 239. We explained:

> "[The defendant] purchased the property subject to [the] plaintiff's first mortgage. Whether [the] plaintiff intervened in the Harris suit or took any action thereupon is simply irrelevant. The Harris suit could not have affected [the] plaintiff's interest in the property, and [the] plaintiff's failure to take action in the suit cannot reasonably be construed as a waiver of its superior right. To hold otherwise would grant [the] defendant a windfall contrary to established case law." *Heritage Federal Credit Union*, 251 Ill. App. 3d at 239.

¶ 60    Similarly, Kelley purchased the Property subject to the Trustee Mortgage which was senior to the U.S. Bank Mortgage. In this regard, the record shows that U.S. Bank Mortgage recorded its mortgage on the Property in November 2007. Four years later, the Trustee Mortgage was recorded. Simultaneously with the Trustee Mortgage, the Subordination Agreement was executed and recorded. Pursuant to the Subordination Agreement, U.S. Bank acknowledged that its mortgage lien "is and shall be and shall remain fully subordinate for all purposes to the lien of the [Trustee] Mortgage on the Property." Although the April 19, 2017, judgment of foreclosure provided that the "rights and interests" of Fannie Mae (the predecessor in interest to the Trustee) were "inferior" to the U.S. Bank Mortgage, that the U.S. Bank Mortgage was "prior and superior to all other mortgages," and that the Property (with exceptions not relevant here) was "free and clear of all liens and encumbrances," the judgment of foreclosure was not a final order. See *Wells Fargo Bank, N.A.*, 2013 IL 115649, ¶ 12 (quoting *EMC Mortgage Corp.*, 2012 IL 113419, ¶ 11) ("In the context

of a mortgage foreclosure proceeding, it is well settled that in the absence of a Supreme Court Rule 304(a) finding in the judgment of foreclosure, 'it is the order confirming the sale, rather than the judgment of foreclosure, that operates as the final and appealable order in a foreclosure case.' "). Five weeks prior to entry of the order confirming the sale, the judgment of foreclosure was vacated as to Fannie Mae and Fannie Mae was dismissed as a party defendant in the U.S. Bank Foreclosure. Thus, on August 16, 2017, when the order confirming the sale was entered—the final and appealable order in the case—the Trustee Mortgage remained superior to the U.S. Bank Mortgage. Based on these facts, and consistent with this court's decision in *Heritage Federal Credit Union*, we hold that the U.S. Bank Foreclosure did not extinguish the superior Trustee Mortgage. As such, the trial court correctly dismissed Kelley's counterclaim.

¶ 61    Kelley attempts to avoid the principles set forth in *Heritage Federal Credit Union* by asserting that "the facts and equities" in that case are distinguishable. Citing various passages from the trial court's rulings, Kelley also suggests that the trial court had previously held that the Trustee Mortgage had been extinguished by the judgment in the U.S. Bank Foreclosure and that this holding constituted a binding determination with *res judicata* effect. We find neither assertion persuasive.

¶ 62    Kelley states that "[t]he facts and equities in [*Heritage Federal Credit Union*] are distinguishable." Kelley asserts that although the *Heritage Federal Credit Union* case is silent on whether the judgment of foreclosure in the Harris suit included language foreclosing the plaintiff's mortgage, Fannie Mae's mortgage was expressly foreclosed by the April 16, 2017, judgment of foreclosure. As noted earlier, however, while the trial court initially entered a judgment of foreclosure against Fannie Mae in the U.S. Bank Foreclosure, it vacated that portion of the judgment and dismissed Fannie Mae as a party defendant before confirming the sale. Accordingly,

when the order confirming the sale was entered the Trustee Mortgage remained superior to the U.S. Bank Mortgage. Thus, as in *Heritage Federal Credit Union*, the Property was sold after the foreclosure of a junior mortgage, a third party purchased the property, the senior mortgagee took little to no action in the junior mortgage foreclosure proceedings, and the senior mortgagee later filed an action to foreclose its lien. *Heritage Federal Credit Union* controls here and mandates dismissal.

¶ 63    With respect to Kelley's second assertion, we initially note that the trial court never held that the Trustee Mortgage had been extinguished. Although the trial court initially entered a judgment of foreclosure against Fannie Mae in the U.S. Bank Foreclosure, it vacated that judgment and dismissed Fannie Mae as a party defendant before confirming the sale. Indeed, in ruling on the Trustee's motion to dismiss Kelley's counterclaim, the court stated that the issue before it turned on "whether U.S. Bank's junior foreclosure extinguished [the Trustee's] mortgage" and that it had "not previously made a determination of the issues currently before [it]." The court then determined that the foreclosure of U.S. Bank's junior mortgage did not extinguish the Trustee's senior mortgage, explaining:

>   "[W]hen Kelley purchased the [P]roperty, the Judgment of Foreclosure which provided for the foreclosure of [Fannie Mae's] interest was not a final order of this Court. U.S. Bank, pursuant to motion, obtained an order which vacated the Judgment of Foreclosure as to [Fannie Mae] *** and dismissed [Fannie Mae] from the foreclosure action. As such, there was no final order which barred or terminated [the Trustee's] interest in the [P]roperty."

¶ 64    Kelley claims that in dismissing his counterclaim, the court's reliance on the motion to vacate the judgment as to Fannie Mae "was a reversal of its earlier position when it refused (correctly) to confirm the first foreclosure sale held in the [Trustee Foreclosure]." To be sure, the

trial court declined to confirm the first judicial sale arising from the Trustee Foreclosure, concluding that "justice was otherwise not done." However, there is a fundamental difference between whether "justice was otherwise not done" for purposes of confirming a judicial sale and the separate inquiry regarding whether a particular lien was legally extinguished. See *NAB Bank v. LaSalle Bank, N.A.*, 2013 IL App (1st) 121147, ¶ 9 (noting that under the "justice clause," a court may refuse to confirm a foreclosure sale because the sale price was so inadequate that it shocked the conscience, the sale was inequitable, fraud or misconduct occurred during the sale, or there were irregularities in the proceedings). In this case, the trial court refused to confirm the first foreclosure sale in the Trustee Foreclosure due to "irregularities in the record" that "tainted the sale process." Moreover, as noted above, in ruling on the Trustee's motion to dismiss Kelley's counterclaim, the trial court expressly stated that it had not decided whether the foreclosure of U.S. Bank's junior mortgage extinguished the Trustee Mortgage.

¶ 65    In addition, for *res judicata* to apply, three requirements must be met: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of cause of action; and (3) identify of parties or their privies. *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 9. As noted above, it is the order confirming the sale, not the judgment of foreclosure, that is the final, appealable order in a mortgage foreclosure. *Wells Fargo Bank, N.A.*, 2013 IL 115649, ¶ 12. As such, the judgment of foreclosure is in the nature of an interlocutory order and can be amended before the order confirming the sale is entered. See *BMO Harris Bank, N.A. v. Wolverine Properties, LLC*, 2015 IL App (2d) 140921, ¶ 27. This is exactly what occurred here. Prior to confirming the sale in the U.S. Bank Foreclosure, the trial court vacated the judgment of foreclosure previously entered against Fannie Mae, the Trustee's predecessor in interest, and dismissed Fannie Mae as a party defendant. Thus, there was no final judgment on the merits in the

U.S. Bank Foreclosure with respect to the Trustee's foreclosure claim, so *res judicata* does not apply.

¶ 66     Kelley also suggests that the Trustee's decision not to participate in the U.S. Bank Foreclosure despite its knowledge of those proceedings signifies that it relinquished its interest in the Property. However, as we noted in *Heritage Federal Credit Union*, the senior mortgagee's "failure to take action in [the junior mortgagee's] suit cannot reasonably construed as a waiver of its superior right." *Heritage Federal Credit Union*, 251 Ill. App. 3d at 239. Accordingly, whether the Trustee participated in the U.S. Bank Foreclosure is irrelevant.

¶ 67     In short, the Trustee Mortgage was superior to the U.S. Bank Mortgage. Accordingly, the trial court properly dismissed Kelley's counterclaim.

¶ 68                                    2. Confirmation Order

¶ 69     As his final assignment of error, Kelley argues that the trial court abused its discretion in confirming the second judicial sale conducted in the Trustee Foreclosure. Section 15-1508(b) of the Foreclosure Law provides in relevant part as follows:

>    "(b) Hearing. Upon motion and notice in accordance with court rules applicable to motions generally, which motion shall not be made prior to sale, the court shall conduct a hearing to confirm the sale. Unless the court finds that (i) a notice [of the sale] *** was not given, (ii) the terms of the sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was not otherwise not done, the court shall than enter an order confirming the sale." 735 ILCS 5/15-1508(b) (West 2018).

Thus, a court has a mandatory obligation to confirm the sale unless it finds that any of the four specified exceptions are present. *ING Bank, FSB v. Tanev*, 2014 IL App (2d) 131225, ¶ 16. The party opposing confirmation of a judicial sale bears the burden of proving that sufficient grounds

exist to disapprove the sale. *TCF National Bank v. Richards*, 2016 IL App (1st) 152083, ¶ 48. The trial court's confirmation of a judicial sale is reviewed for an abuse of discretion. *Bayview Loan Servicing, LLC v. 2010 Real Estate Foreclosure, LLC*, 2013 IL App (1st) 120711, ¶ 32. A trial court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable, or where its ruling rests on an error of law. *Urban Partnership Bank*, 2017 IL App (1st) 162086, ¶ 15.

¶ 70    Kelley argues that the trial court erred in confirming the second judicial sale because "justice was otherwise not done." While this defense allows the trial court some discretion in rejecting judicial sales, that discretion is "extraordinarily narrow." *NAB Bank*, 2013 IL App (1st) 121147, ¶ 16. As noted by one court, the "justice clause" is often invoked by parties making a last-ditch effort to extricate themselves from a lost foreclosure case. *NAB Bank*, 2013 IL App (1st) 121147, ¶ 16. The "justice clause" does not allow for "untrammeled judicial discretion," but "merely codifies judicial practices that existed prior to the 1985 enactment of the Foreclosure Law. *NAB Bank*, 2013 IL App (1st) 121147, ¶ 17. Those practices include refusing to confirm a sale because: (1) the sale price was so inadequate that it shocked the conscience; (2) the sale was inequitable; (3) fraud or misconduct was conducted during the sale; and (4) there were irregularities in the proceedings." *NAB Bank*, 2013 IL App (1st) 121147, ¶ 17. Even so, there must "serious defects in the *actual sale process*, and not because of alleged errors in the process leading up to the underlying judgment." *NAB Bank*, 2013 IL App (1st) 121147, ¶ 19.

¶ 71    Kelley argues that "justice was otherwise not done" because the sale at issue was inequitable and there were irregularities in the proceedings. The trial court, however, concluded that Kelley failed to carry his burden. Indeed, Kelley identifies no errors in the *actual process* of the second judicial sale. Instead, he complains on appeal that: (1) the trial court's rulings rejecting the first judicial sale identified inequities and irregularities; (2) the Trustee neither participated in

the U.S. Bank Foreclosure nor alerted the court to its senior lien interest; (3) Fannie Mae was named in the judgment in the U.S. Bank Foreclosure; (4) the U.S. Bank Mortgage was extinguished by the judgment in the U.S. Bank Foreclosure; and (5) the Trustee named U.S. Bank as a defendant, but did not amend its complaint or attempt to modify the judgment in the Trustee Foreclosure. As noted above, however, none of these alleged errors relate to the actual process of the second judicial sale. Thus, we cannot say that the trial court abused its discretion in confirming the second judicial foreclosure sale.

¶ 72     Kelley also asserts that his ownership interest "has never been addressed in the 2017 Case." This is simply inaccurate as the core issue of his counterclaim was whether his ownership interest was subject to the Trustee Mortgage. Even so, this is not an error in the *sale process* that would support a finding that justice was otherwise not done.

¶ 73     Citing to *Wells Fargo Bank, N.A.*, 2013 IL 115469, ¶ 19, Kelley argues that the supreme court has held that the justice clause of section 15-1508(b) of the Foreclosure Law "codifies the long-standing discretion of courts of equity to refuse to confirm a judicial sale where unfairness is shown that is prejudicial to an interested party." Kelley's reliance on *Wells Fargo Bank, N.A.* is misplaced. In that case, the borrower filed a motion to vacate the judgment of foreclosure and sale prior to the plaintiff filing a motion to confirm the judicial sale. The supreme court permitted this procedure because "the mandatory provisions of section 15-1508(b) had not yet been triggered" by the filing of a motion to confirm the sale and the trial court's discretion was therefore not constricted by the Foreclosure Law. *Wells Fargo Bank, N.A.*, 2013 IL 115469, ¶ 30. The facts in this case are materially different. Here, the Trustee filed a motion to confirm the sale prior to Kelley's objection and the subjects the trial court could consider were considerably narrowed. See *Wells Fargo Bank, N.A.*, 2013 IL 115469, ¶ 27. Further, Kelley did not file a motion to vacate the

foreclosure judgment or otherwise take any action against the judgment (aside from indirectly attacking it in his counterclaim) despite having almost a year between his intervention and the Trustee's motion to approve the second judicial sale. Under these circumstances, the trial court could only consider whether justice had not been done in the process that led to the second judicial sale. As noted above, however, Kelley identified no such error.

¶ 74 Accordingly, based on the above reasoning, we hold that the trial court did not abuse its discretion in confirming the second judicial sale of the Property in case No. 17-CH-368.

¶ 75                                      V. CONCLUSION

¶ 76 For the reasons set forth above, we affirm the judgment of the circuit court of McHenry County.

¶ 77 Affirmed.